Submitted on record and briefs May 3, reversed August 28, 1996

# STATE OF OREGON,
*Respondent,*

*v.*

# JESUS LOPEZ-MEDINA,
*Appellant.*

## (9402628CR; CA A88064)

923 P2d 1240

Garrett A. Richardson and Multnomah Defenders filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General, filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was indicted with two codefendants, Jose Manuel-Pena[1] and Javier Pulido-Pena, in an eight-count indictment alleging various drug offenses arising from the execution of search warrants on December 2, 1994, in Klamath County. The jury found him not guilty on six of the counts and convicted him of delivery of marijuana for consideration and delivery of a controlled substance (methamphetamine). ORS 475.992. On appeal, he argues that the trial court erred in denying his motions for judgment of acquittal on the two counts. We reverse.

Pursuant to the warrants, two residences were searched. The first was located on Highway 39 and was the home of Pulido-Pena, Arreberto Pena-Arrendondo, and a man named Carlos. Pulido-Pena and Pena-Arrendondo are brothers and both worked at the Highway 39 ranch, owned by Luis Pena, another brother. The second residence searched, at 2232 Union Avenue, was defendant's residence. There was testimony that defendant is Arreberto Pena-Arrendondo's brother. Next door to defendant's house were the Newhall Apartments, which were also owned by Luis Pena, and managed by defendant.

At the Highway 39 house, the officers found evidence of a drug operation, including drugs, scales and repackaging material. The officers also found guns and ammunition. In the search, the officers used a dog that "alerted" to various items. At one point, the dog alerted to a dresser drawer in which the police found a large amount of cash. The search also revealed a bill for telephone service at Highway 39, which was addressed jointly to defendant (under the name of Jesus Pena[2]) and Javier Pulido at a Menlo Lane residence, six sets of keys to the Newhall Apartments and bank and title company receipts totaling $31,300 in the name of Luis Pena.

---

[1] Jose Manuel Pena was indicted under the name Jose Pena-Arrendondo. He testified that he was not known as Jose Pena-Arrendondo, that he was the cousin of Javier Pulido and that he lived at 2232 Union Street. Before trial, the charges against him were dismissed.

[2] Defendant stipulated that he sometimes uses the name of Jesus Pena.

During the search of the Union Street residence, the dog alerted to a nightstand in which was found a plastic baggie containing $1000. There was no drug residue on the baggie. Defendant had $840 in his pants pocket, and the dog strongly alerted to that money. Defendant stated that he was unemployed. He said that the money was rent money collected in December, but at trial a rent receipt book was entered into evidence showing two December entries totaling only $361.

There was testimony from an officer that statistics show that 80% of the United States currency involving bills of $20 and above is contaminated with some kind of narcotic residue, and that a $1 bill that has no residue on it could be contaminated by being in a wallet next to a contaminated bill. The officer also testified that the dog could determine the difference between small and large amounts of residue but could not distinguish between kinds of drugs. The officer testified that he sometimes withdraws a couple of hundred dollars in cash and takes it home to experiment with the dog, and that sometimes the dog alerts to the money and sometimes it does not.

There was testimony that city water records showed that Luis Pena owned and paid the water bill for defendant's residence, as well as for the Newhall Apartments. The bill was sent to defendant's Union Avenue address but the water records listed the telephone number at the Highway 39 house as the contact point. At trial, an officer testified that he had been told by a third party that defendant's vehicle had been seen at the Highway 39 house.

■■ Defendant assigns error to the denial of his motions for judgment of acquittal, arguing that there was insufficient evidence to support a finding of guilty. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the state to determine if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

Defendant argues that there was no evidence that he was in possession of the controlled substances found at the Highway 39 house, no evidence that marijuana or methamphetamine was found at his Union Street residence, and no

evidence that he lived at the Highway 39 premises. Therefore, he argues, he could not be convicted of delivery of controlled substances unless he were convicted under the theory that he intentionally aided the drug operation. Defendant contends that the state argued that "these people" from both residences were intimately connected[3] and relied on the documents and keys showing that Jesus Pena had a connection with Luis Pena and the Highway 39 property. Defendant argues, however, that that evidence showed that Luis Pena owned the property but that it did not show, nor did the cash taken from defendant, that he knew about the drug activities at the Highway 39 property or was involved with them. He contends that the state's evidence does not support an inference beyond a reasonable doubt that he intentionally aided and abetted the drug delivery.

The state argues that the evidence was sufficient to sustain defendant's convictions either on a theory that defendant constructively possessed drugs with the intent to sell them or aided and abetted in the crime of the delivery of the drugs. Delivery is the actual, constructive, or attempted transfer of a controlled substance from one person to another. ORS 475.005(8); *State v. Frederickson*, 92 Or App 223, 226, 757 P2d 1366 (1988). To prove constructive possession, the state must prove that the defendant knowingly exercised control over, or the right to control, the contraband. *State v. Garcia*, 120 Or App 485, 488, 852 P2d 946 (1993). To aid and abet requires proof of involvement with the crime, ORS 161.155(2),[4] although there does not have to be proof of defendant's personal presence at the time and place of the commission of the offense. *State v. Rosser*, 162 Or 293, 344, 86 P2d 441, 87 P2d 783, 91 P2d 295 (1939).

---

[3] Defendant, Luis Pena, Javier Pulido-Pena, Arreberto Pena-Arrendondo and Jose Pena-Arrendondo denied a family relationship.

[4] ORS 161.155 provides that a person is criminally liable for the conduct of another person constituting a crime if:

"(2) With the intent to promote or facilitate the commission of the crime the person:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

Here, there is no direct evidence that defendant had control of, or connection to, the operation. That connection must be inferred from the underlying facts. The state contends that the underlying facts permit the inference that defendant was involved with the drug activity at the Highway 39 house, where the officers found the telephone bill addressed jointly to defendant and Javier Pulido, as well as six sets of keys to the Newhall Apartments and bank and title company receipts in the name of Luis Pena. Luis Pena owned and paid the water bill for defendant's residence and for the Newhall Apartments, defendant's truck had been seen at the Highway 39 residence, and Jesus Pena's name was listed jointly on a telephone bill for the Highway 39 house. Thus, the state argues, the evidence found at Highway 39 showed "close connections" between defendant and the residents there and that the connection "was not simply a familial one, but extended into matters of business involving the Highway 39 house."

An inferred fact must be one that the jury is convinced follows beyond a reasonable doubt from the underlying facts. *State v. Rainey*, 298 Or 459, 466, 693 P2d 635 (1985). We do not agree that the underlying facts support an inference beyond a reasonable doubt that defendant was closely connected to the drug operation at the Highway 39 house. There was no evidence as to how frequently defendant's vehicle was seen at Highway 39, whether he drove the vehicle there, how long it stayed or when it had been seen. The evidence also does not support the conclusion that defendant's business relationship with Luis Pena extended to the drug activity. There was no evidence providing a nexus between defendant and the presence of the documents and keys found at the Highway 39 house. There was no evidence as to who opened the phone and water accounts or why they were opened with the information contained in the bills; there was no evidence how the keys to the apartments arrived at the Highway 39 premises, to whom they belonged, or whether defendant had ever had them.

The state contends, however, that when the evidence found at the Highway 39 house is combined with the cash found at defendant's house and on his person, it is "reasonable to infer that he obtained the money by virtue of direct

participation in the illegal drug enterprise at Highway 39." The state contends that the conclusion that the cash, which defendant could not explain as personal income and "which did not come from rent receipts," was from the drug operation is strengthened because the dog strongly alerted to the money. The state argues that, although the jury could have concluded that the dog's actions proved little, it could also have concluded that, because the alert was strong, it showed that the money had been in contact with drugs at the Highway 39 house.

However, even assuming that the jury could conclude from the dog's alert that the money had recently been in contact with controlled substances, there was no evidence that the contamination came from the Highway 39 house. There was evidence of the general contamination of money in this country, and the state's position that, because defendant knew or was related to persons at the Highway 39 house and because letters and keys that might have been connected to him were found there, there was sufficient evidence for the jury to conclude that the money was contaminated at Highway 39 requires too great an inferential leap. *See State v. Shuneson*, 132 Or App 283, 287, 888 P2d 90 (1995) (to infer that the defendant knew vehicle was stolen based on driver's reckless driving requires too great an inferential leap); *see also State v. Carter/Grant*, 316 Or 6, 13, 848 P2d 599 (1993) (a fact that merely supports inference that some other fact is possible as one among a range of many other and different possibilities does not support inference that any specific one of the possible facts is itself probable).

There was not sufficient evidence from which the jury could find beyond a reasonable doubt that defendant had any control over the drugs at the Highway 39 house or that he aided and abetted the drug activity at that place. *See State v. Bauer*, 128 Or App 598, 876 P2d 802 (1994) (denial of motion for judgment of acquittal on possession of marijuana was error where state presented no evidence that the defendant owned or leased the trailer where the drugs were found and there was not sufficient evidence for the jury to conclude that she lived there). The trial court erred in denying defendant's motion for judgment of acquittal.

Because of our disposition, we do not reach defendant's second assignment of error.

Reversed.