Argued and submitted March 9, convictions on Counts 11, 12, 13, 17, 18, and 19 reversed; convictions on remaining counts affirmed; remanded for resentencing on affirmed counts June 6, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LINDA MEANS,
*Defendant-Appellant.*
Multnomah County Circuit Court
050331762; A129823

160 P3d 1001

James N. Varner filed the brief for appellant.

Heather A. Vogelsong, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant was convicted of six counts each of identity theft, ORS 165.800, and fraudulent use of a credit card, ORS 165.055, relating to six transactions with a stolen credit card. On appeal, she challenges the sufficiency of the evidence in support of the convictions on Counts 11, 12, and 13 (alleging identity theft) and Counts 17, 18, and 19 (alleging fraudulent use of a credit card), which related to three of those transactions. Defendant argues that the evidence adduced at trial was insufficient to allow a jury to infer that she made the transactions. She also argues that the evidence does not establish that the transactions occurred in Multnomah County, where she was convicted. We do not address defendant's first argument, because we agree that the record lacks sufficient evidence to establish the location of the transactions. Accordingly, we reverse the challenged convictions and remand the case for resentencing.[1]

At defendant's trial in Multnomah County Circuit Court, the state introduced evidence showing that a credit card was stolen from a tavern in Vancouver, Washington, during a burglary in the early morning hours of December 18, 2004, and that it was found by Portland police officers a week later in defendant's motel room on Interstate Avenue in Portland. One of the owners of the tavern, Ferree, testified that, when he went to work on the morning of the eighteenth, he discovered that the credit card, among other things, had been stolen. He testified that he called the issuing bank to cancel the missing credit card, to find out whether any transactions had been made with it, and, if so, to reverse any unauthorized charges.[2] Ferree testified that he instructed the bank to reverse six charges:

"We reversed three of them that were made to Tri-Met, Overlook, in Portland, Oregon. We reversed two of them with Hollywood Game Crazy, in Portland, Oregon. And

---

[1] *See* ORS 138.222(5)(b) ("If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts.").

[2] It is not clear from the record when Ferree called the bank.

reversed one of them at a Fred Meyer store, in Portland, Oregon."

Ferree testified further that he contacted a credit card company to find out which credit card terminals had been used for each of the transactions. According to his testimony, after learning that information, he called the Hollywood Game Crazy store on Lombard Street, but did not talk to anyone from Tri-Met or Fred Meyer.

The state introduced evidence, including store receipts and credit card receipts, showing that, on December 18, 2004, defendant, using the stolen credit card, made one purchase at the Fred Meyer store on North Interstate Avenue in Portland at 10:05 a.m. and two purchases, at 10:43 a.m. and 10:48 a.m., respectively, at the Hollywood Game Crazy at Lombard and Interstate. Employees from the two stores testified that both are located in Multnomah County. The owner of the motel where defendant was staying on December 18 testified that the motel is located in Multnomah County, as well. With respect to the Tri-Met transactions, however, the state offered no evidence beyond Ferree's testimony.

After the state rested its case, defendant moved for a judgment of acquittal on the counts related to the Tri-Met transactions, arguing, among other things, that the state had failed to prove that they occurred in Multnomah County. The trial court denied the motion. The jury convicted defendant on all counts. This appeal followed.

Defendant assigns error to the denial of her motion for judgment of acquittal, arguing that the only evidence concerning the use of the stolen credit card to obtain property or services from Tri-Met was Ferree's testimony that he reversed three charges that "were made to Tri-Met, Overlook, in Portland, Oregon."[3] According to defendant, there was no evidence of where or when the credit card was used. Specifically, she argues that nothing in the record indicates that the three transactions occurred in Multnomah

---

[3] Defendant does not challenge the convictions stemming from the transactions at Hollywood Game Crazy and Fred Meyer.

County. Thus, she contends, the state failed to establish venue.

The state responds that a jury could reasonably conclude that "Tri-Met, Overlook, in Portland, Oregon," is in Multnomah County. The state notes that the evidence established that the unauthorized transactions at Hollywood Game Crazy and Fred Meyer occurred at stores located in Multnomah County. According to the state, because Ferree testified that all of the transactions occurred at locations in Portland, and other evidence established that two of those locations were in Multnomah County, the jury could reasonably infer that the third location was in Multnomah County as well. The state contends that that inference is bolstered by the fact that the motel where defendant was living was shown to be in Multnomah County and by the fact that the Portland Police Bureau was involved in the investigation. The state also argues that jurors from Multnomah County could reasonably rely on their own experience to infer that Overlook, a Portland neighborhood, is in Multnomah County.

■    In reviewing the denial of a motion for a judgment of acquittal, we review the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the state to determine whether a jury could find all of the elements of the charged offenses beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Venue is not an element of the offense, but it is a material allegation that the state must prove to the jury beyond a reasonable doubt, and, thus, inquiries into the sufficiency of the evidence apply to venue as well. *Id.* Venue may be established by circumstantial evidence. *Id.* at 126. Although a jury may draw reasonable inferences from direct and circumstantial evidence, it may not engage in speculation or guesswork. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004).

■    We conclude that the state did not adduce sufficient evidence to establish that the three Tri-Met transactions occurred in Multnomah County. There is evidence that all six of the unauthorized transactions took place in Portland, but, with respect to the Tri-Met transactions, nothing in the record establishes that the Portland location of those transactions lies within Multnomah County. There is no evidence

showing where Overlook is in relation to Multnomah County, or even that it is a neighborhood. Although the evidence indicates that the Hollywood Game Crazy and Fred Meyer transactions occurred at stores located in Multnomah County, it amounts to little more than guesswork to conclude that the Tri-Met transactions did as well, especially given that there is no evidence as to when on December 18 the Tri-Met transactions occurred.

*Cervantes*, on which the state relies, did not involve comparable facts. In that case, which was tried in Coos County, direct evidence showed that the defendant had raped the victim at a particular motel. However, no witnesses testified that the motel is in Coos Bay or that either Coos Bay or the motel is in Coos County. *Cervantes*, 319 Or at 123. The Supreme Court concluded that the jury reasonably could infer that the crime occurred in Coos Bay, given that the law enforcement agency that investigated the crime scene and arrested the defendant at the motel was the Coos Bay Police Department. *Id.* at 126. In the court's view, the jury could further infer that Coos Bay is in Coos County

> "based on the fact that the coordinator for the Coos County Victims' Assistance office, who acts as a liaison between the police, the prosecutor, and the victim, had contact with the victim while acting in her official capacity, where both the victim and the law enforcement agency were located in the City of Coos Bay."

*Id.* at 127.

In this case, given that nothing in the record indicates that the Tri-Met transactions occurred in defendant's motel room,[4] the mere facts that the credit card was found in her room and that the motel was in Multnomah County says little, if anything, about where the transactions occurred. Similarly, the involvement of the Portland Police Bureau says nothing about the county in which the Tri-Met transactions occurred. In short, unlike in *Cervantes*, the evidence here permits only speculation, not a reasonable inference,

---

[4] Nothing in the record suggests that defendant used the credit card to purchase Tri-Met goods or services over the telephone from her room.

that the challenged offenses took place in the same county in which they were prosecuted.

■ We turn finally to the state's argument that the Multnomah County jury could rely on its own experience to infer the location of the Tri-Met transactions. Although it is certainly possible that some of the jurors were familiar with the location of the Overlook area and its relation to Multnomah County, we reject as speculative reliance on such information to establish venue beyond a reasonable doubt.

In summary, the state failed to adduce sufficient evidence from which the jury could reasonably infer that the Tri-Met transactions took place in Multnomah County. It follows that the trial court erred in denying defendant's motion for a judgment of acquittal.

Convictions on Counts 11, 12, 13, 17, 18, and 19 reversed; convictions on remaining counts affirmed; remanded for resentencing on affirmed counts.