Argued and submitted December 16, 2010, affirmed November 9, 2011, petition for review denied May 17, 2012 (352 Or 33)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DENZIL KEENE HENNAGIR,
*Defendant-Appellant.*

Douglas County Circuit Court
08CR1498MI; A140446

266 P3d 128

Ernest G. Lannet argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant, a 65-year-old male, was convicted of third-degree sexual abuse and attempted third-degree rape, after engaging in sexual conduct with a 14-year-old female. On appeal, defendant argues that the evidence was legally insufficient to support the attempted rape conviction because no reasonable juror could infer, on this record, that defendant intended to engage in sexual intercourse with the victim, as opposed to some other criminal sexual conduct. In a separate assignment of error, defendant argues that he is entitled to a new trial because the court erred in allowing the state to offer an out-of-court statement that improperly commented on the credibility of the victim. We affirm.

We begin with defendant's contention that he was entitled to a judgment of acquittal on the count of attempted third-degree rape. ORS 163.355(1) ("A person commits the crime of rape in the third degree if the person has sexual intercourse with another person under 16 years of age."); ORS 161.405(1) ("A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."). When reviewing the denial of a motion for a judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Fries*, 344 Or 541, 543, 185 P3d 453 (2008).

One day in late July 2008, the victim was visiting her grandparents at their home. Defendant, an acquaintance of the victim's grandfather, was at the house. At defendant's urging, the victim, her grandfather, and defendant all drove to a "fishing hole" about a half mile from the house, where they planned to fish and swim. The victim and her dog rode in defendant's truck, and her grandfather drove separately. When they all reached the fishing hole, defendant changed his mind and no longer wanted to stay there; he instead wanted to "see what the clear cut logging looked like" nearby. Defendant invited the victim to "go up to see where they were logging" at a site four or five miles away. The victim accepted the invitation, and they left together in defendant's truck. The victim's grandfather did not join them.

Defendant stopped his truck at a "logging landing," which overlooked a valley. There were no other houses, cars,

or people in the area. Defendant told the victim, who was wearing a ponytail, that she should "put down [her] hair because [she] would look more beautiful with it down." Then he reached over and removed the victim's hair tie by himself. Next, defendant began kissing her on the lips. Defendant tried to "stick his tongue in [the victim's] mouth" and, when rebuffed, "started sticking his tongue in [her] ear." Defendant also "started kissing [her] neck."

The kissing episode lasted approximately a minute, and defendant then took the victim's hand and led her to a clearing. At the clearing, defendant claimed to have spotted a skunk in a ditch and began throwing rocks toward the ditch. Defendant and the victim then returned to the truck and stood near the truck bed, where defendant offered her a drink—"water, soda or alcohol." She declined the offer.

Defendant then began kissing her again. He was "kissing [her] neck and sticking his tongue in [her] ear." Defendant told the victim that he was "sorry" but that "he just couldn't resist it because [she] was so beautiful."

After the second kissing incident, they again left the area where the truck was parked. They migrated to an area where defendant created "some sort of small rock formation"—apparently something made out of stones and sticks. After defendant created the rock formation, they returned to the truck. Near the truck, defendant "grabbed [the victim's] hands and put them around his waist." While standing face-to-face with the victim, defendant took her left hand and "put it by his penis." When defendant made the victim "touch his penis over his jeans," the victim pulled her hand away. Defendant then put the victim's hand back on his penis a second time, and she again pulled it away. Defendant next tried to lift up the victim's shirt, but she pulled it back down. At that point, defendant asked the victim whether she wanted to go home. She told him that she did, and defendant, after first offering the victim the keys to his truck, took the victim back to her grandparents' house, dropped her off, and sped away.

The question on appeal is whether those facts, and all reasonable inferences that can be drawn from them, are sufficient to establish attempted rape in the third degree. As

set out above, the crime of third-degree rape involves "sexual intercourse with another person under 16 years of age." ORS 163.355(1). A person "attempts" that crime by "intentionally engag[ing] in conduct which constitutes a substantial step toward commission of the crime." Thus, in order to convict defendant, the state was required to prove that defendant took a substantial step toward having sexual intercourse with the victim in this case.

At the close of the state's case, defendant moved for a judgment of acquittal on the ground that the state had failed to prove that defendant took a "substantial step towards sexual intercourse" with the victim:

"So viewing the facts most favorable for the State, we have a kissing and we have some type of touching to some degree. The question is, is that a substantial step towards sexual intercourse. And I would say it is not a—it is a leap of inference beyond what an average person could assume.

"The fact that a person is kissing a person, there is no way a person could say yes, the ultimate event was to go from kissing to removing clothing to sexual intercourse. There hadn't been any statements [of defendant's intent].

"* * * * *

"Here we are only able to infer that because he was kissing her and there was some touching that his intent was to take it farther than he did. And I don't think there's a basis for a jury to say that based on those [sic] type of conduct that that had to be intent was [sic] to intercourse. The intent could have been touching which is sex abuse or various other types of charges but not intercourse."

The court denied the motion, explaining that "the alleged victim's account of this * * * seems a substantial way along the route to having intercourse. I think it's a jury question." The jury convicted defendant of attempted third-degree rape and third-degree sexual abuse.

On appeal, defendant again contends that there is no evidence in the record from which a reasonable trier of fact could find that his objective was sexual intercourse with the victim. Defendant argues that, "[a]lthough defendant's conduct may corroborate the fact that he intended to commit *a*

sex crime, it is not sufficient to corroborate his intent to commit the *specific* crime alleged." (Emphasis added.) In other words, defendant argues that no reasonable juror could find beyond a reasonable doubt either (1) that he had the requisite criminal intent to have sexual intercourse, and not some other sexual contact, with the victim, or (2) that he took a "substantial step" toward sexual intercourse.

First, we must determine, as a matter of law, whether it was a reasonable inference from defendant's conduct that he intended to have sexual intercourse. "Reasonable inferences from circumstantial evidence are permissible; speculation and guesswork are not." *State v. Bilsborrow*, 230 Or App 413, 418, 215 P3d 914 (2009). It is the court's role to determine—as a matter of law—where the "sometimes faint" line must be drawn between those inferences that are reasonable and those that are too speculative. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (quoting *Hutchinson and Hutchinson*, 187 Or App 733, 741, 69 P3d 815 (2003)) (internal quotation marks omitted). As we have often observed, "[t]he line between a reasonable inference and impermissible speculation is not always easy to describe with precision." *State v. Macnab*, 222 Or App 332, 335, 194 P3d 164 (2008). Nonetheless, borrowing from the reasoning of federal courts, we have explained:

> " 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.' "

*Bivins*, 191 Or App at 467 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)).

It is possible that historical facts will give rise to more than one reasonable inference—*i.e.*, more than one reasonable probability will flow from the established facts; in

that circumstance, the jury must decide which of the permissible inferences to draw. *State v. Miller*, 196 Or App 354, 358, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005) ("The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw."). Conversely, we have described impermissible inferences as those that require "too great an inferential leap," *State v. Lopez-Medina*, 143 Or App 195, 201, 923 P2d 1240 (1996), or that require a "stacking of inferences" that is "too speculative." *State v. Piazza*, 170 Or App 628, 632, 13 P3d 567 (2000).

Defendant argues that the state cannot prove intent because defendant may have had other intentions. A defendant's subjective intent "is rarely, if ever, proven by direct evidence. Intent is an operation of the mind, and it is seldom susceptible of direct proof." *State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991). Rather, "[t]his subjective fact is usually established by a consideration of objective facts, and from these objective facts an ultimate conclusion is drawn." *Id.* In other words, jurors ordinarily infer intent from circumstantial evidence. The availability of an inference that defendant had *other* intentions, such as sodomy or sexual abuse, does not preclude an otherwise reasonable inference that defendant intended sexual intercourse.[1] We have never required the state to "rule out" sexual objectives other than intercourse in order to prove an attempted rape conviction. To the contrary, we have allowed jurors to infer the defendant's intent to engage in sexual intercourse based on unwanted sexual advances that might also be consistent with other sexual offenses.

For example, in *State v. O'Hara*, 136 Or App 15, 900 P2d 536, *rev den*, 322 Or 362 (1995), the defendant argued that he was entitled to a judgment of acquittal on two counts of attempted rape because "his actions—loitering in a women's bathroom, physically assaulting the victim while there and grabbing a stall door during the struggle—are not sufficient to prove that he intended to engage in sexual intercourse with the victim." *Id.* at 18. We explained:

---

[1] For example, defendant may have intended to have sexual intercourse with the victim and to sodomize the victim.

"The facts in this case would support jury findings that defendant had been lying in wait, in a location where only women would be, had tried to knock out or otherwise disable the victim, had tried to trap her in a bathroom stall and had threatened her to submit to him or face negative consequences ('you'd better'). Also, defendant had not waited for a victim who was carrying a purse and had not fled when this victim fought back. The jury could infer from those facts that defendant intended to commit a crime against the victim's person, as opposed to her property. The jury also could have inferred from defendant's verbalizations and actions—especially his attempts to force the victim to the floor—that defendant's goal was not simply to assault the victim, *i.e.*, *the jury could infer that he intended to commit a sex act*. The jury could have agreed with the position taken by the state:

> " 'Although defendant's lingering in the women's restroom was certainly voyeuristic, and consistent with sexual arousal from the certainty that women were removing their clothing next to him, defendant's aggressive conduct reflects [that he] was tired of passive sexual arousal. Had defendant merely wished to see the victim he could simply have looked over the stall, rather than [having] punched her, taken her to the floor, and attempted to pull her into the confined area.'

> "On the basis of those facts and inferences, and especially in the light of the severity of defendant's attack and the location in which it took place, *the jury could reasonably have concluded that defendant had taken a substantial step toward forcing the victim to submit to sexual intercourse. See State v. Rainey*, 298 Or 459, 466, 693 P2d 635 (1985) (articulating circumstances in which an inferred fact may be used to establish an element of the offense). The trial court did not err in denying defendant's motion for judgment of acquittal."

136 Or App at 18-19 (emphasis added). There, we held that it was reasonable for a juror to infer that the defendant intended to have sexual intercourse, despite the fact that the defendant had not engaged in acts that were uniquely associated with intercourse rather than other sexual crimes, such as sodomy or sexual abuse.

We reject defendant's contention that, because he might have intended other sexual offenses, no reasonable juror could find beyond a reasonable doubt that he intended to have sexual intercourse with the victim. Defendant's intent, on this record, was an issue for the jury to decide.

The state's evidence established an escalating pattern of sexual activity that a reasonable juror could infer demonstrated defendant's intent to commit third-degree rape and that provided proof of defendant's conduct consistent with a criminal purpose to commit third-degree rape. Defendant invited and then drove the victim to an isolated location. He attempted to seduce the victim, telling her how beautiful she was, removing the victim's ponytail holder so that her hair would hang down, and then kissing her and licking her neck and ears. He twice placed her hand on his penis and, when those efforts were halted, unsuccessfully attempted to lift up the victim's shirt. There is, in our view, a logical connection between that activity and defendant's intent to have sexual intercourse, and a juror would be entitled to draw the inference, among other reasonable inferences, that defendant intended to have sexual intercourse with the victim.

The second step in our analysis is to consider whether defendant took a "substantial step" toward sexual intercourse. ORS 161.405(1). To constitute a "substantial step" toward a charged offense, a defendant's conduct must "(1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991);[2] *see also State v. Minow*, 246 Or App 179, 185, 265 P3d 54 (2011) (the defendant's acts of being intoxicated,

---

[2] Defendant relies on the Ninth Circuit opinion concerning Walters's habeas corpus petition filed after the Oregon Supreme Court affirmed his conviction. *See Walters v. Maass*, 45 F3d 1355 (9th Cir 1995). In that case, the Ninth Circuit held that the defendant's attempt to entice the victim into his truck was not a substantial step toward the commission of rape and sodomy when the only evidence of intent to rape and sodomize was his previous conviction of those crimes against another girl. 45 F3d at 1359. It is atypical that the Oregon Supreme Court and the Ninth Circuit reach opposite conclusions in applying an Oregon statute to the same party. We are bound by the Oregon Supreme Court decision. *Walters*, 311 Or at 86 (the defendant's persistent efforts to entice the intended victim into his truck, his following the girl, and his statements to the police officer and to the girl's mother allowed jury to find that the defendant's conduct constituted a substantial step toward kidnapping, rape, and sodomy).

possessing the keys to his truck, and standing in front of the open driver's side door trying to get into the truck, and the fact that only the presence of another person prevented the defendant from getting into the truck, taken together, allow inference that defendant took a "substantial step" toward the crime of driving under the influence).

In *State v. Rinkin*, 141 Or App 355, 366, 917 P2d 1035 (1996), we explained that sexual conduct can "verify" the existence of a purpose to commit a particular sexual act even if it is not "uniquely referable" to that act. *Rinkin* involved a charge of attempted first-degree sodomy. We explained:

> "Although defendant's conduct, like Walters', was not uniquely referable to committing sodomy in the first degree in that it included no specific act or reference to deviant sex, such exact correspondence was not required. Rather, *once the state presented legally sufficient evidence of defendant's specific intent to commit sodomy in the first degree, proof of conduct demonstrating a criminal purpose that was consistent with committing sodomy satisfied the 'verification' requirement.*"

*Id.* at 366-67 (footnote omitted; emphasis added). In addition, in *State v. Benson*, 63 Or App 467, 470, 664 P2d 1127, *rev den*, 295 Or 730 (1983),[3] we considered whether the state had presented sufficient evidence to support a charge that the defendant attempted "to have sexual intercourse with the victim by subjecting her to forcible compulsion." We explained:

> "Defendant must be found to have intentionally engaged in conduct that constitutes a substantial step toward commission of the crime with the intent to complete the crime. *State v. Evans*, 43 Or App 95, 99, 602 P2d 317 (1979). The real issue in the present case is not whether defendant's conduct could be found to constitute a 'substantial step' toward commission of the crime, but whether the circumstantial evidence was sufficient for the jury to infer that defendant intended to complete the crime, *i.e., that he*

---

[3] *Benson*, like *O'Hara*, 136 Or App 15, is a *forcible compulsion* case. But that is not the element of the crime that was at issue there. The question on appeal in both of those cases was whether the evidence was sufficient for a jury to find that the defendant was attempting to have *sexual intercourse*.

*intended to have sexual intercourse by subjecting the victim to forcible compulsion."*

*Id.* (emphasis added). We held that the evidence was sufficient:

> "The jury could find the following. Defendant followed the victim in the early morning to an area where there were few people or cars and high weeds and thick underbrush. He covered his face with a bandana and wore gloves to hide his identity from the victim. He grabbed her breast firmly for a few seconds and then grabbed her arm in an attempt to stop her or get her off the bicycle. He let go only after hearing a passerby yelling at him. It was only because of the victim's ability to maintain control of her bicycle and the approach of the passerby that nothing further happened. *The jury was entitled to conclude that defendant had the intent to engage in first degree rape and had taken a substantial step toward commission of that crime."*

*Id.* (emphasis added). That is, we held that a jury could reasonably infer that the defendant took a substantial step toward *sexual intercourse* despite the fact that his conduct—grabbing the victim's breast and attempting to stop her bike in a secluded area—was consistent with other possible sexual crimes, and there was no other evidence that intercourse, specifically, was the defendant's objective.

Likewise here, the state presented legally sufficient evidence that defendant took a substantial step toward sexual intercourse with the victim. The state's proof that defendant took the victim to an isolated area away from her grandfather, kissed and licked the victim, put her hand on his penis, and tried to lift up her shirt were acts that advanced the criminal purpose charged and provided the requisite "verification" of his criminal purpose. For that reason, and the others stated above, the trial court did not err in denying defendant's motion for a judgment of acquittal on the charge of attempted third-degree rape.

We turn, then, to defendant's remaining assignment of error: that the trial court erred in admitting evidence that, in defendant's view, improperly commented on the credibility of the victim, a witness in the case. Shortly after the incident

at the logging landing, defendant was interviewed by Williams, a deputy sheriff.

During the trial, a tape recording of that interview was played for the jury. Defendant objected on the ground that Williams made statements during the interview regarding the victim's credibility, and playing the recording would therefore violate the rule that a witness may not give an opinion as to whether another witness is telling the truth. *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) ("[A] witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth."). The trial court overruled the objection but gave a cautionary instruction *before* playing the tape. That instruction told the jury that,

> "as part of the interview questions are asked and sometimes opinions are given about, well, don't you know that this and so is so. And that's merely part of the interview process. *It's not meant to be taken by you as the truth. It's just it's a technique in interviewing.*
>
> "And, for example, someone might give his opinion about the truthfulness of child witnesses or something like that just as part of a[n] interrogation or interview. And so you're not to take those kind of statements as the truth unless—well, you're not supposed to take them as the truth.
>
> "And if you're confused about what I said maybe I am still a little bit—but it's hard to—I'm not supposed to talk about it too much but just try to focus on the give and take of the interview. Okay? Go ahead."

(Emphasis added.)

On appeal, defendant argues that the interview should have been redacted to omit Williams's comments regarding the victim's credibility and that the cautionary instruction was inadequate to "purge the taint of the testimony." The state responds that Williams's comments were out-of-court statements made during a police interview, not trial testimony. *See State v. Odoms*, 313 Or 76, 82-83, 829 P2d 690 (1992) ("[T]he point of *Middleton* was only to preclude testimony by *one trial witness* about whether *another trial witness* is telling the truth[.]"; "[A] relevant out-of-court statement, recounted at trial, generally may not be excluded

merely because it is phrased in the form of an opinion." (Emphasis in original.)). *See also State v. Lupoli*, 348 Or 346, 364, 234 P3d 117 (2010) (describing *Odom* as holding "that the rule against opinion evidence fosters concrete answers by witnesses, but has no sensible application to statements made out of court").

We need not decide whether the taped interview should have been redacted before being played to the jury, because, given the cautionary instruction, we do not understand how defendant was prejudiced. The jury was specifically informed that Williams's statements were made as part of an interview technique and were not to be considered as truth. Absent any evidence to the contrary, the jury must be presumed to have followed the court's instructions. *State v. Thompson*, 328 Or 248, 271, 971 P2d 879, *cert den*, 527 US 1042 (1999).

Affirmed.