Submitted May 25, 2011, affirmed February 23, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHANIE FAYE DAVIS,
*Defendant-Appellant.*

Jackson County Circuit Court
081320MI; A141637

273 P3d 251

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy Public Defender, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from her convictions for one count of driving under the influence of intoxicants, ORS 813.010, four counts of recklessly endangering another person, ORS 163.195, and one count of reckless driving, ORS 811.140. Defendant asserts that the trial court erred by denying her motion for a judgment of acquittal on the ground that the state failed to adduce evidence proving that the charged conduct took place in Jackson County and, thus, that Jackson County was the proper venue for her trial. We affirm.

Because defendant was convicted by a jury, we state the facts in the record, including reasonable inferences derived from those facts, in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 873 P2d 316 (1994). Defendant was observed by two eye witnesses entering a restaurant in Medford, Oregon. The witnesses testified that defendant, who had four children with her, appeared intoxicated. According to one witness, defendant was having trouble ordering and eating her food and was falling asleep at the table. When defendant left the restaurant and got into her pickup truck, two of the children got into the cab of the truck, and the other two sat in the bed of the truck. One of the witnesses called the Medford Police because she was concerned that defendant would drive while intoxicated. Medford Police Officer Vollrath responded to the call. He testified that the call had come in from a restaurant "at 4th and Jackson * * * right in the middle of town. I was on the west side of town so it was going to obviously take a little time to get where I was going." Vollrath received updates on defendant's movements while he drove across town, and he testified that "the updates that were being provided to me via the dispatcher were that the vehicle was—had left [the restaurant] and was travelling towards Central Avenue." Vollrath also talked to one of the witnesses, who had followed defendant in her own car, and the witness told Vollrath that "[defendant] came to an empty intersection of Barnett and Riverside * * * [and] [e]ventually [defendant] made a left turn onto Barnett and then drove towards the freeway." Vollrath intercepted defendant as she was "north bound on I-5 from Barnett." He activated his overhead lights and stopped defendant "just south of the viaduct, the bridge that goes over East 12th street and that area."

Vollrath determined that defendant was intoxicated and arrested her. He then took her to the Medford Police Department.

After the close of the state's evidence, defendant moved for a judgment of acquittal, arguing that the state had not adduced evidence establishing that defendant's conduct took place in Jackson County. The trial court denied the motion, explaining:

> "But, in this particular case I'm not going to—I'm going to allow that to go to the jury. And because of the amount of time and effort that the officers and the state put into this case and the fact that they did say that it was in Jackson County on 4th Street and they did say that they made enough reference to [the restaurant] in Medford and what not, I find that there is sufficient evidence that the jury can infer from those statements that this occurred in Jackson County, in the light most favorable to the state."

Defendant was convicted by the jury, and this appeal followed.

Defendant renews her argument on appeal that there was insufficient evidence to allow the jury to infer that her conduct had taken place in Jackson County. Defendant urges that this case is controlled by our decisions in *State v. Means*, 213 Or App 268, 160 P3d 1001 (2007), and *State v. Tirado*, 118 Or App 294, 846 P2d 1201 (1993), where we held that the evidence was insufficient to allow a jury to infer that venue had been proved. The state replies that *Means* and *Tirado* are distinguishable and that the evidence in this case was sufficient to allow the jury to infer the existence of venue. Alternatively, the state argues that this court should take judicial notice under OEC 201 that Medford is located in Jackson County.[1]

Venue is not an element of an offense, but it is a material allegation that the state must prove beyond a reasonable doubt. *Cervantes*, 319 Or at 125. The state is not required to prove venue by direct evidence; instead, venue may be established by inferences drawn from circumstantial

---

[1] Because of our conclusion that the evidence was sufficient to permit the jury to infer venue, we do not reach the state's alternative reliance on judicial notice.

evidence. *Id.* at 125-26. However, "[t]here is a difference between inferences that may be drawn from circumstantial evidence and mere speculation." *State v. Vaughn,* 175 Or App 192, 201, 28 P3d 636 (2001). The line between a reasonable inference and impermissible speculation is not always easy to describe with precision. *State v. Bivins,* 191 Or App 460, 467, 83 P3d 379 (2004). We have attempted to explain the distinction in the following terms:

> " 'The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.' "

*Id.* (quoting *Tose v. First Pennsylvania Bank, N.A.,* 648 F2d 879, 895 (3d Cir), *cert den,* 454 US 893 (1981)). In a similar vein, we have described an impermissible inference as one that "requires too great an inferential leap," *State v. Lopez-Medina,* 143 Or App 195, 201, 923 P2d 1240 (1996), or that requires a "stacking of inferences" that is "too speculative." *State v. Piazza,* 170 Or App 628, 632, 13 P3d 567 (2000).

Here, we conclude that there was a logical probability that the ultimate fact that defendant's conduct took place in Jackson County followed from the facts that the state adduced. In particular, the evidence showed that defendant had been seen in a restaurant at a specific address in Medford. Vollrath testified that the restaurant was "right in the middle of town" and that, because he was on patrol in west Medford when he received the call, "it was going to obviously take a little time to get where I was going." Vollrath also testified that defendant had been observed "travelling towards Central Avenue" and had come "to an empty intersection of Barnett and Riverside" before making "a left turn onto Barnett and then drove towards the freeway." Vollrath also stated that, when he made contact with defendant she was "north bound on I-5 from Barnett" and that he stopped defendant "just south of the viaduct, the bridge that goes over East 12th street and that area," and he ultimately took her to the Medford Police Department.

The foregoing evidence is analogous in inferential weight to the evidence of venue that was adduced in *Cervantes*. In that case, which was prosecuted in Coos County, the direct evidence showed that the defendant had raped the victim at a particular motel. However, no witness testified that either Coos Bay or the motel was located in Coos County. *Cervantes*, 319 Or at 123. The Supreme Court nevertheless concluded that the jury reasonably could infer that the crime occurred in Coos Bay, because the law enforcement agency that investigated the crime scene and arrested the defendant at the motel was the Coos Bay Police Department. *Id.* at 126. The court further concluded that the jury could infer that Coos Bay is located in Coos County

> "based on the fact that the coordinator for the Coos County Victims' Assistance office, who acts as a liaison between the police, the prosecutor, and the victim, had contact with the victim while acting in her official capacity, where both the victim and the law enforcement agency were located in the City of Coos Bay."

*Id.* at 127.

Although, unlike in *Cervantes*, the prosecutor here did not present evidence from a Jackson County employee, we nevertheless conclude that, based on Vollrath's and the other witnesses' testimony set out above, the jury had direct evidence that defendant's conduct took place in Medford and could have inferred that Medford is located in Jackson County.

The cases on which defendant relies are not to the contrary. In *Tirado*, the defendant was stopped by a "federal law enforcement officer * * * on Avenue 'G,' one-half mile from the White City Veteran's Administration Domiciliary," and later was arrested by an Oregon state officer assigned to patrol Highway 62." The prosecutor failed to present evidence showing that those locations were in Jackson County. 118 Or App at 296. The defendant appealed, and the state argued that it had presented sufficient circumstantial evidence to prove venue. We disagreed, explaining that:

> "The state did not prove that Avenue 'G,' the Veteran's Administration Domiciliary and Highway 62 are in Jackson County or that defendant drove in Jackson County. The

state argues that there is only one such domiciliary in Oregon, that it is in White City, that White City is near Medford and that it is common knowledge that Medford is in Jackson County. None of those facts was proved through evidence at trial."

*Id.* at 297.

In *Means*, the defendant was charged with six counts of identify theft and fraudulent use of a credit card.

"The state introduced evidence, including store receipts and credit card receipts, showing that, on December 18, 2004, defendant, using the stolen credit card, made one purchase at the Fred Meyer store on North Interstate Avenue in Portland at 10:05 a.m. and two purchases, at 10:43 a.m. and 10:48 a.m., respectively, at the Hollywood Game Crazy at Lombard and Interstate. Employees from the two stores testified that both are located in Multnomah County. The owner of the motel where defendant was staying on December 18 testified that the motel is located in Multnomah County, as well. With respect to the Tri-Met transactions, * * * the state offered no evidence beyond Ferree's testimony."

213 Or App at 271. The defendant moved for a judgment of acquittal with respect to the Tri-Met charges, arguing that the state had failed to prove that the Tri-Met location—"Overlook, in Portland, Oregon"—was in Multnomah County, where she was tried. The trial court denied that motion, and the defendant was convicted.

We reversed, concluding that "the state did not adduce sufficient evidence to establish that the three Tri-Met transactions occurred in Multnomah County." *Id.* at 272. We explained that "the involvement of the Portland Police Bureau says nothing about the county in which the Tri-Met transactions occurred," and we also noted that "[t]here [was] no evidence showing where Overlook is in relation to Multnomah County, or even that it is a neighborhood." *Id.* Finally, we rejected the state's argument that "the Multnomah County jury could rely on its own experience to infer the location of the Tri-Met transactions," explaining that "[a]lthough it is certainly possible that some of the jurors were familiar with the location of the Overlook area and its

relation to Multnomah County, we reject as speculative reliance on such information to establish venue beyond a reasonable doubt." *Id.* at 274.

Unlike in *Tirado*, here the jury was not required to "stack inferences" to conclude that defendant's conduct took place in Medford and that Medford is located in Jackson County. In *Tirado* the jury had to infer (1) that the Veteran's Domiciliary was in White City; (2) that White City is near Medford; and (3) that Medford is in Jackson County. Here, by contrast, the jury only had to infer that Medford is located in Jackson County, because the state proved by direct evidence that defendant's conduct took place in Medford. And, unlike in *Means*, here there is no dispute that defendant's conduct took place in Medford. In *Means*, there was no direct evidence that an Overlook neighborhood was located in Portland or that any such neighborhood existed, much less existed in the part of Portland that is located within Multnomah County. There, the jury would have been required to infer the existence of the neighborhood, its relation to Portland, and its relation to Multnomah County. Here, by contrast, the jury only was required to infer that Medford was located in Jackson County. That inference, unlike the cascading inferences required in *Tirado* and *Means,* did not require so "great an inferential leap" from the evidence set out above as to be impermissible. *Lopez-Medina*, 143 Or App at 201. Accordingly, the trial court correctly denied defendant's motion for judgment of acquittal.

Affirmed.