Argued and submitted September 27, 2018, reversed and remanded
December 16, 2020

Michelle SCOTT,
*Plaintiff-Respondent,*

*v.*

Leslie KESSELRING
and Kesselring Communications, LLC,
*Defendants-Appellants.*

Clackamas County Circuit Court
CV15110065; A163709

479 P3d 1063

In this personal injury action resulting from a rear-end car accident, defendant appeals from a judgment awarding damages to plaintiff. Defendant admitted that she negligently caused the car accident that injured plaintiff; however, defendant disputed the amount of damages claimed. Before trial, defendant sought to exclude from the jury's consideration evidence of the precise reason that she was negligent in her driving—that she was looking at her cellphone in the moments before the accident. The trial court denied that motion. *Held*: The challenged evidence was not relevant to an issue before the jury and, thus, the trial court erred in admitting it. That error requires reversal because it affected defendant's substantial rights.

Reversed and remanded.

Douglas V. Van Dyk, Judge.

Julie A. Smith argued the cause for appellants. Also on the briefs was Cosgrave Vergeer Kester LLP.

Travis Eiva argued the cause and filed the briefs for respondent.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

Ortega, P. J.

Reversed and remanded.

Egan, C. J., dissenting.

_____
* Egan, C. J., *vice* Garrett, J. pro tempore.

**ORTEGA, P. J.**

In this personal injury action resulting from a rear-end car accident, defendant[1] appeals from a judgment awarding plaintiff $41,000 in economic damages and $200,000 in noneconomic damages. Defendant admitted that she negligently caused the car accident that injured plaintiff; however, defendant disputed the amount of damages claimed. Before trial, defendant sought to exclude from the jury's consideration evidence of the precise reason that she was negligent in her driving—that she was looking at her cellphone in the moments before the accident. The trial court denied that motion, concluding that the evidence was relevant to the issue of whether plaintiff's injuries were reasonably foreseeable, and defendant assigns error to that denial. We conclude that the challenged evidence was not relevant to an issue before the jury and, thus, that the trial court erred in admitting it. We also conclude that the error affected defendant's substantial rights. Accordingly, we reverse and remand.[2] Based on that disposition, we do not address defendant's other assignments of error.

We first set out the undisputed underlying facts and the record developed at the hearing on defendant's motion *in limine*. We discuss additional facts that pertain to whether

---

[1] Defendant Kesselring Communications, LLC, is also party to this appeal, having admitted that it was vicariously liable for defendant Kesselring's fault in causing the accident. For ease of reading, we refer jointly to both defendants as "defendant."

[2] Plaintiff raises a conditional cross-assignment of error on appeal that we reject as an impermissible cross-assignment, because it seeks reversal of the court's dismissal of her claim for punitive damages, which is more than seeking a reversal of an intermediate ruling of the court. *See Truck Insurance Exchange v. Friend*, 253 Or App 527, 528 n 2, 291 P3d 743 (2012), *rev den*, 353 Or 562 (2013) (a party could not raise by cross-assignment a challenge to a dismissal of one of his counterclaims because it sought modification of and reversal of part of the judgment and not reversal of an intermediate ruling); *Samuel v. King*, 186 Or App 684, 690, 64 P3d 1206, *rev den,* 335 Or 443 (2003) (cross-appeal is necessary where a party's argument, if successful, "would yield relief different from that afforded under the trial court's judgment"); *see also DeMendoza v. Huffman*, 334 Or 425, 446, 51 P3d 1232 (2002) (punitive damages are not a "remedy" under Article I, section 10, of the Oregon Constitution, but a way of "vindicating society's interest in punishing and deterring especially egregious conduct"). As a result, plaintiff was required to bring a cross-appeal to challenge the trial court's ruling, and we cannot address plaintiff's argument through a cross-assignment of error.

the trial court's error affected defendant's substantial rights in the analysis of that issue below.

Defendant and plaintiff were involved in a car accident on a freeway when defendant rear-ended plaintiff. At the time of the accident, it was raining, and the road was slick. Just before the accident, defendant looked at her cellphone to find a contact number for a client. Plaintiff alleged that, as a result of the accident, she suffered neck, back, shoulder, and leg injuries, and that she suffered from posttraumatic stress and anxiety that led her to attempt suicide less than six months after the accident. She sought $97,505 in past medical expenses, $50,000 in future medical expenses, and $350,000 in noneconomic damages. Plaintiff also moved to amend her complaint to add a claim for punitive damages, as permitted by ORS 31.752, which the trial court allowed.

Defendant admitted that she rear-ended plaintiff and that immediately before the accident she was looking at her cellphone. She also admitted that she was responsible for causing the accident. However, she denied that she was responsible "for causing the nature and extent of plaintiff's alleged injuries and damages." Specifically, defendant contested the extent of plaintiff's injuries and argued that it was not foreseeable that plaintiff would attempt suicide following the accident.

Before trial, defendant moved the court to exclude punitive damages from the jury's consideration and, if that motion were granted, to also exclude from the jury's consideration evidence that defendant had been using her cellphone at the time of the accident.

The court granted defendant's motion to exclude punitive damages. In considering the motion, the court engaged plaintiff's counsel in the following colloquy:

"THE COURT:  *** And what I understand the evidence to be *** is that the defendant was *** monkeying with her cellphone. She was looking down, she was looking for a phone number, she was looking for a number to call ***, and because she was looking down, boom, she hit the person from behind. And I don't expect the evidence to show anything any different than basically that.

"But—am I correct?

"[PLAINTIFF]:   Other than the circumstances under which she did this, which was driving on a freeway at freeway speeds, in a very wet and rainy day, where the roads were slick, things she knew about, and she also knew that there was another car crash directly north of where she was driving that she saw before she reached for her telephone.

"* * * * *

"THE COURT:    Okay. So against that backdrop of facts as it's represented to me by the plaintiff, could a reasonable jury conclude that that is a reckless and outrageous indifference to a highly unreasonable risk of harm with a conscious indifference to the health[,] safety and welfare of others."

Based on those facts, the court granted defendant's motion to exclude punitive damages, concluding that a reasonable juror could not find that defendant acted with the requisite mental state.[3]

Based on that ruling, defendant asked the court to consider its motion to exclude any evidence or mention (including in *voir dire*) that she was using her cellphone in the moments before she rear-ended plaintiff's car. Defendant argued that, without punitive damages, the evidence was not relevant to any issue before the jury; because she had already admitted fault for the accident, what she was doing at the time of the accident was immaterial. Defendant also argued that, even if the evidence was relevant, it should be excluded under OEC 403, because its probative value was substantially outweighed by unfair prejudice due to "the inflammatory nature of her looking at a cellphone and what certain jurors may think about that."

Plaintiff countered that why the crash occurred was relevant because defendant was not admitting anything other than her negligence in causing the collision. The court rejected that line of thought, but then offered the following argument for plaintiff:

---

[3] Under ORS 31.730(1), for a person to be liable for punitive damages, that person must have either acted with "malice" or with a "reckless and outrageous indifference to a highly unreasonable risk of harm and *** with a conscious indifference to the health, safety and welfare of others."

"But you alluded though perhaps causation or foreseeability of damages or you know, maybe stretching the scope of damages, might be affected by something having to do with the manner of the accident occurring.

"[PLAINTIFF]:   Correct.

"THE COURT:   So let's talk about those, you know, foreseeability, for example, with a cellphone, could have a really bad accident. Cellphone use could result in a really bad accident on the freeway so the scope of foreseeability, you know, might even extend to post-traumatic stress, might even extend that far. If you hit somebody hard enough going that fast and you know what, you drive around distracted, there's a degree of foreseeability about the scope of harm. Is that what your argument would be?"

Defendant responded by asserting again that, because she had admitted that "she failed to exercise the care of a reasonably prudent person under the circumstances[,] * * * any evidence of what she was doing, how she breached that standard, is irrelevant." Defendant further articulated her OEC 403 challenge that, "due to all the attention in the media, and people's perceptions of cellphone use while driving, the fact that she looked down at her cellphone could be inflammatory, so I think the probative value of that type of evidence is substantially outweighed by the risk of unfair prejudice."

The court then asked plaintiff how the type of risk undertaken could correlate with the foreseeability of loss. Plaintiff responded that it was relevant because not saying how defendant was negligent "takes away the emphasis of, you know, this wasn't a bump from behind, a simple mistake, this was a conscious choice. Here was a choice by the defendant to stop behaving like a reasonable driver and to be distracted intentionally."

During further colloquy with the parties, defendant clarified that she was contesting foreseeability of the extent of plaintiff's claimed injuries and her suicide attempt, and she noted that she would testify to driving 45 miles per hour at the time of the accident, which was more slowly than the speed limit, and thus there was conflicting evidence of speed. Defendant also pointed out that plaintiff did not even

learn until defendant's deposition that defendant had been using her cellphone at the time of the collision, so the fact of defendant's cellphone use did not make plaintiff's post-traumatic stress more or less foreseeable.

The court then denied defendant's motion, explaining its ruling as follows:

"I do consider that the degree of risk that * * * is undertaken bears on the scope of harms that might reasonably be anticipated. I've alluded to that with several of my remarks. And I think that is a circumstance here that is germane to that consideration. The jury is being asked to decide what might be within the scope of trauma that a person might experience as a result of a certain category of negligent conduct, then the nature of that conduct becomes a fact of consequence and is relevant.

"And the question then remains whether the probative value is substantially outweighed by the danger of unfair prejudice.

"In some respects, I think this issue that we're talking about, the foreseeability of such things as post-traumatic stress or a suicide event, are important in this case, it's a big deal in this case. It may seem remote in terms—if you analyze it only in terms of foreseeability. And the defense is well-positioned to argue that it's not something that a person would reasonably anticipate.

"But given the risk that was undertaken, and that a reasonable juror could consider that that risk was a high one it seems to me that post-traumatic stress associated with a high risk is something that a person could reasonably anticipate.

"* * * * *

"So I'm going to allow the [*voir dire*] questions around cellphone use. And I anticipate allowing some portion of the evidence to describe—some part of the evidence to describe that a cellphone—that there was monkeying with the cellphone, as the backdrop of the circumstances of the accident. Not to dwell on it, * * *—I mean, negligence is admitted.

"So I don't—I want to be mindful that there's a point at which these examinations could be calculated only to

inflame, and probative value at a point may be substantially outweighed by the danger of unfair prejudice.

"But I anticipate that the circumstances of the accident will be admissible given the foreseeability of the specific types of harm, post-traumatic stress in particular."

At the conclusion of the trial, the jury awarded plaintiff $41,000 in economic damages and $200,000 in noneconomic damages. Defendant appeals the judgment reflecting those awards and assigns error to the trial court's ruling on its motion *in limine* to exclude evidence of her cellphone use at the time of the accident, arguing that the trial court erred under both OEC 401 and OEC 403.

We review the trial court's relevancy determination under OEC 401 for legal error and its determination under OEC 403 for an abuse of discretion. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Because defendant challenges a pretrial ruling, we evaluate that ruling "on the basis of the same record that the trial court relied on in making the challenged ruling." *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012). As explained below, we conclude that the trial court erred under OEC 401, because the challenged evidence was not relevant to an issue in the trial. Thus, we do not address whether the court abused its discretion under OEC 403.

Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." That is "a relatively low threshold of relevance." *Pitt*, 352 Or at 576 n 5. "OEC 401 requires a 'rational relationship' between the evidence offered 'and the substantive issues properly provable in the case.'" *State v. Turnidge (S059155)*, 359 Or 364, 450, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017) (quoting *State v. Guzek*, 322 Or 245, 251, 906 P2d 272 (1995)). Plaintiff, as the proponent of the evidence at issue, had the burden to demonstrate its relevance. *Pitt*, 352 Or at 576.

The basis of the trial court's ruling was that the evidence that defendant was using her cellphone was relevant

because the "degree of risk" undertaken is relevant to "the scope of harms that might reasonably be anticipated." The trial court further stated that, if "[t]he jury is being asked to decide what might be within the scope of trauma that a person might experience as a result of a certain category of negligent conduct, then the nature of that conduct becomes a fact of consequence and is relevant." On appeal, plaintiff defends the trial court's ruling.[4] Thus, we must decide whether the precise reason that defendant was negligent— that she was using her cellphone moments before colliding with plaintiff's car—is relevant to the question of whether "the particular harm that befell" plaintiff—physical and emotional trauma—was foreseeable. We conclude that it is not.

There is no logical connection between the evidence that defendant was using her cellphone in the moments before the accident and the foreseeability of plaintiff's injuries, in particular her post-traumatic stress and suicide attempt. Plaintiff did not know that defendant was using her cellphone until well after the collision occurred. Thus, there was no logical connection presented by plaintiff between the fact of defendant's cellphone use and the type or degree of emotional trauma or stress that plaintiff experienced because of the accident; that is, plaintiff did not

---

[4] Plaintiff also argues that the cellphone evidence was "relevant to prove the severity of the collision *** and the added emotional distress to plaintiff upon learning of the reckless behavior of defendant to use the phone[.]" We reject those arguments, because plaintiff did not assert either as a basis for relevance below, the court did not articulate either as a basis for its ruling, and plaintiff does not request that we exercise our discretion to affirm the trial court under our "right for the wrong reason" principles. However, because the dissent takes up arguments presented by plaintiff with regard to the severity of the collision— specifically, the arguments that the evidence is relevant because it shows that defendant was looking at her cellphone and was not aware of her speed and did not brake before she hit plaintiff—we do address them as necessary to respond to the dissent.

Additionally, plaintiff argues that the trial court was "right for the wrong reason," because the cell phone evidence was relevant to prove plaintiff's punitive damages claim and the trial court erred in taking punitive damages from the jury's consideration. We reject that argument as improper, because it does not provide a basis on which to affirm the trial court. *See Outdoor Media Dimensions Inc v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) ("[T]he 'right for the wrong reason' principle permits a reviewing court—as a matter of discretion—to *affirm* the ruling of a lower court on an alternative basis when certain conditions are met." (Emphasis added.)).

experience any different trauma because she later learned that the driver who hit her was using a cellphone.

There also is no logical connection between defendant's cellphone use and whether plaintiff's claimed injuries were a foreseeable consequence of the accident. Defendant could have been distracted by any one of numerous reasons; the fact that the thing that distracted her was her cellphone does not make it more or less probable that plaintiff's injuries would be a foreseeable consequence. That is, defendant's cellphone use is not relevant because whether or not the injuries to plaintiff are foreseeable is due to the nature of the accident itself and not that defendant was using her cellphone when the accident occurred. Plaintiff did not articulate, and the trial court's ruling did not contain, any logical connection between defendant's cellphone use and an issue that was before the jury—whether plaintiff's injuries were a foreseeable consequence of the accident. Thus, the trial court erred in admitting the evidence of defendant's cellphone use and allowing plaintiff to bring it up during *voir dire* and throughout the trial.

The dissent argues that the evidence of defendant's cellphone use moments before the collision is relevant to the disputed speed that defendant was traveling and whether she braked before the collision, and that the speed of travel and absence of braking is relevant to whether plaintiff's injuries were foreseeable. Even setting aside for the moment that that theory of relevance was not asserted below, *see* 308 Or App at 19 n 4, we reject it on its merits. First, the dissent asserts that the evidence was relevant with regard to defendant's credibility because it casts doubt on her speed estimate and suggests that she probably did not brake before the accident. We are mindful, however, that defendant did not dispute the severity of the crash; defense counsel confirmed defendant's admission to traveling 45 miles per hour at the time of the collision. At no point in the pretrial hearing— the only record before us on this issue—did plaintiff suggest that there was any dispute about the severity of the crash or that defendant had claimed that she was not looking down or had braked. More importantly, plaintiff did not seek to admit the evidence as relevant to defendant's credibility.

Rather, plaintiff treated the evidence as directly relevant to the damages deserving of compensation.

Second, even assuming a factual dispute about the severity of the crash as posited by the dissent, the record still lacks a logical connection between that premise and the foreseeability of plaintiff's injuries. The only reasonable inference that can be drawn from the evidence that defendant was looking at her cellphone and the severity of the crash is that she was uncertain of her precise speed before she hit (keeping in mind that plaintiff was not seeking to introduce the evidence as relevant to defendant's credibility). That inference alone has no logical connection to the foreseeability of plaintiff's injuries. What cannot be reasonably inferred from the cellphone evidence is each link in the chain of impermissible inferences that is required to get from that one reasonable inference to some kind of logical connection to foreseeability. *See, e.g.*, *State v. Macnab*, 222 Or App 332, 336, 194 P3d 164 (2008) ("[W]e have described an impermissible inference as one that 'requires too great an inferential leap,' *State v. Lopez–Medina*, 143 Or App 195, 201, 923 P2d 1240 (1996), and one that requires a 'stacking of inferences' that is 'too speculative.' *State v. Piazza*, 170 Or App 628, 632, 13 P3d 567 (2000)."). Those impermissible inferences are, at a minimum, that, because defendant was uncertain of her speed, she therefore was traveling faster than 45 miles per hour; rear-end car collisions at speeds faster than that cause more severe injuries and stress; and therefore, plaintiff's injuries (including her post-traumatic stress) were a more probable consequence of the collision because defendant was looking at her cellphone. Because those necessary inferences cannot reasonably be made from the evidence that defendant was using her cellphone in the moments before the accident—and plaintiff offered no argument or other evidence at the pretrial hearing that could complete the chain of reasonable inferences—the cellphone evidence is not relevant to the foreseeability of plaintiff's claimed injuries in the manner posited by the dissent.

Our inquiry does not end there; we cannot reverse on that evidentiary error unless the error substantially affected defendant's rights. *Jett v. Ford Motor Co.*, 335 Or

493, 497, 72 P3d 71 (2003); ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."); OEC 103(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). "Evidentiary errors substantially affect a party's rights and, therefore, require reversal 'when the error has some likelihood of affecting the jury's verdict.'" *Yoshida's Inc. v. Dunn Carney Allen Higgins & Tongue*, 272 Or App 436, 450, 356 P3d 121 (2015), *rev den*, 358 Or 794 (2016) (quoting *Dew v. Bay Area Health District*, 248 Or App 244, 258, 278 P3d 20 (2012)); *see also Purdy v. Deere and Co.*, 355 Or 204, 232, 324 P3d 455 (2014) ("If * * * there is some likelihood that the jury reached a legally erroneous result, a party has established that the instructional error substantially affected its rights within the meaning of ORS 19.415(2).").

Our review of the record persuades us that there is "some likelihood" that the admission of the cellphone evidence affected the jury's determination of plaintiff's damages. Beginning with *voir dire*, plaintiff asked potential jurors how they felt about drivers who use cellphones while driving, and several potential jurors voiced opinions about how unsafe such conduct was. During opening statements, direct examination of defendant, and direct examination of plaintiff, plaintiff brought up and emphasized that defendant was on her cellphone at the time of the accident. Particularly during questioning of defendant, plaintiff asked many questions about defendant's use of her cellphone and whether it caused the collision.

During closing arguments, plaintiff again placed emphasis on defendant's cellphone use, stating, "Is it reasonably foreseeable that you could kill someone on [a] highway doing what [defendant] did? Absolutely it is." and that "maybe technically she wasn't breaking the law [by using her cellphone]. But was she breaking the law of common sense and human nature and reasonable responsibility for everyone driving on the highway? And that's not even a question that needs to get answered." Plaintiff also argued that defendant's cellphone use while driving was a reason to compensate plaintiff:

"I wrote it down [what defense counsel said], 'The defendant's taken responsibility for touching her cellphone.' My response to that is, 'Big deal. Taking responsibility for touching the phone—for touching your cellphone does nothing for [plaintiff].' The defendant needs to be responsible for all the harm that she caused. That's what taking responsibility means, right? That's what taking responsibility means. If we taught our kids about responsibility, we teach them to take responsibility for everything that they caused, not just for the act of touching their cellphone.

"And she—and through the course of this I got the impression, and maybe you did as well, she's sorry that she did it, but she's sorry that she did it not because of the harm she caused. She's sorry that she did it because it caused her to be here, and she's sorry that she did it because of how it might make her look. *** She's not sorry that she hurt [plaintiff]. She's sorry that she ended up in this situation by touching her cellphone. And that's a very different thing.

"* * * * *

"Now, [defense counsel] gets a chance to tell—on behalf of her client to step up and tell you how defendant is finally going to accept responsibility for all the harm that she caused when she stopped looking where she was driving and picked up her phone, to unlock it and search for a contact at a freeway speed on a wet and rainy highway in a car that she wasn't familiar[,] with another car crash right in front of her. So it's her turn to tell you how the defendant's finally going to accept responsibility for that."

The evidence that defendant used her cellphone had the potential to inflame the sympathies of the jury for plaintiff; indeed, plaintiff sought to use the evidence to make that very appeal to influence the jury's damages determination—it was a central theme in plaintiff's closing arguments.

In that light, and given the large noneconomic damage award by the jury relative to its economic damages award, there is some likelihood that the evidence had an effect on the jury's verdict, and, thus, the court's error in admitting that evidence substantially affected defendant's rights. Accordingly, we reverse and remand.

Reversed and remanded.

**Egan, C. J.,** dissenting.

I respectfully dissent because I would conclude that plaintiff met her burden in establishing that defendant's use of her cellphone in the moments before a motor vehicle collision was relevant. However, before I address plaintiff's relevancy argument, I first address whether plaintiff preserved her contention that the cellphone evidence was relevant to prove the severity of the collision. I briefly restate material details of the record for purposes of preservation:

> "THE COURT:  So let's talk about those, you know, foreseeability, for example, with a cellphone, could have a really bad accident. Cellphone use could result in a really bad accident on the freeway so the scope of foreseeability, you know, might even extend to post-traumatic stress, might even extend that far. If you hit somebody hard enough going that fast and you know what, you drive around distracted, there's a degree of foreseeability about the scope of harm. Is that what your argument would be?
>
> "[PLAINTIFF]:  That's part of it. That's a good argument, thank you, yeah.
>
> "* * * * *
>
> "THE COURT:  * * * I mean, if we go 90 [mph] there's more risk than if we go 70 in a 50.
>
> "[PLAINTIFF]:  I—yes.
>
> "THE COURT:  Now, if we're 40 miles over the speed limit, it's different than if we're 20 miles over the speed limit. Both might be negligent, but the one might invoke a scope of loss or harm greater than the other and so foreseeability would seem to attach to such a consideration."

The court concluded that the cellphone evidence was relevant, stating that,

> "I do consider that the degree of risk that under—is undertaken bears on the scope of harms that might reasonably be anticipated. I've alluded to that with several of my remarks. And I think that is a circumstance here that is germane to that consideration. The jury is being asked to decide what might be within the scope of trauma that a person might experience as a result of a certain category of negligent conduct, then the nature of that conduct becomes a fact of consequence and is relevant."

The majority states that "plaintiff did not assert" that the cellphone evidence was relevant to the severity of the crash. 308 Or App at 19 n 4. I disagree that preservation requirements are, or should be, so narrow and strict that the colloquy restated above is inadequate to meet the policies that underlie preservation. *See Drake v. Alonso*, 285 Or App 620, 625, 396 P3d 961 (2017) (noting that the policies that underlie preservation are "fairness, notice to the opposing party, and efficient judicial administration"). Here, the court and plaintiff began a colloquy about how the speed that a person is driving might affect the "scope of loss or harm." Additionally, that colloquy involved how distracted driving and varying speed might create greater harm. At one point, the court *explicitly* said: "Cellphone use could result in a really bad accident." The majority's reasoning does not comport with our policies of preservation, which, "[u]ltimately, *** is a practical one," *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009), that requires "procedural fairness to the parties and to the trial court." *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). Those policies are met in the colloquy reiterated above.

The majority also states that "the court did not articulate" that the cellphone evidence was relevant to prove the severity of the collision as a basis for its ruling. 308 Or App at 19 n 4. However, in the court's ruling it stated, not only was the evidence relevant to the element of foreseeability, but it "alluded" to why it was relevant with "several of [the court's] remarks." The majority ignores the "remarks," to which the court referred in its ruling. In reviewing the court's "remarks," many of them discussed whether higher speeds and distracted driving would support a reasonable inference that would aid the jury in determining the severity of the crash. For the above stated reasons, I would conclude that plaintiff's contention is preserved.

As I would conclude that argument is preserved, I next address whether the cellphone evidence is relevant. The trial court stated, and I agree, that the evidence of defendant's cellphone use moments before the crash is relevant to the disputed speed that defendant was travelling. When a driver is distracted, that calls into question that driver's estimate of his or her speed. That distraction here is

relevant to the element of foreseeability in two ways. First, the credibility of defendant's testimony may make the jury view that testimony as having less probative value. For instance, a jury may reasonably infer that because defendant was looking down, she is actually uncertain of what speed she was travelling. From that, the jury may additionally infer that defendant was travelling "freeway speeds."[1] Second, the cellphone evidence is relevant because it may allow an inference that defendant did not brake as the crash occurred. Either inference would support plaintiff's theory that this collision was a high-impact collision and undermines the credibility of defendant's testimony that she was traveling at 45 mph. Furthermore, because, as defendant admitted, there was "conflicting evidence" about her speed, the cellphone evidence was relevant to a disputed fact in evidence. The question thus reduces to whether there is a "logical connection" between the foreseeability of the harms that plaintiff suffered and the disputed speed that defendant was travelling.

Any effect on defendant's credibility may, as a consequence, allow the jury to infer that defendant was trying to diminish the foreseeability of some of the alleged damages by stating that she was travelling at a rate slower than the speed limit. When a driver is distracted, and the sole expected testimony about the driver's speed is from that driver, that person's credibility becomes part-and-parcel of the speed, and, accordingly, the foreseeability of damages. That is especially true when a defendant argues, as here, that they are going below the speed limit. In cases like this, the testimony is relevant to defendant's attempt to diminish

---

[1] To be sure, I am uncertain of what plaintiff means by "freeway speeds." However, it is clear from the record that the court understood that plaintiff was referring to speeds greater than 45 mph, and, based on the common understanding of the usual speed of travel on interstate freeways and our standard of review, we further infer from the record that the court understood plaintiff to be referring to speeds of 55 mph or greater. *See State ex rel OHSU v. Haas*, 325 Or 492, 498, 942 P2d 261 (1997) (stating that we review "the record in a manner consistent with the trial court's ruling under OEC 104(1) and assume that the trial court found facts consistent with its final conclusion"); *see also Dodge v. Tradewell Stores Inc.*, 256 Or 514, 515-16, 474 P2d 745 (1970) ("It is not necessary to establish by the direct testimony of witnesses the existence of every fact in a lawsuit. The jury is entitled to draw inferences from matters of common knowledge.").

what damages that she is liable for. Thus, we need not know the *exact* speed that defendant was travelling to understand the scope of harms defendant was liable. Rather, defendant's cellphone use gives rise to the inference that she was travelling at "freeway speeds," which is a link in the chain for a jury to determine whether defendant's testimony concerning her liability is credible and the connection that has to the conduct that gives rise to the scope of defendant's liability—her speed.

Next, the cellphone evidence is relevant because it may allow an inference that she did not brake as the crash occurred. As defendant was looking down when the crash occurred, that supports a reasonable inference that defendant did not slow down. Consequently, a juror could reasonably infer what type of injuries are foreseeable from a high-speed, or low-speed collision. In comparing a range of speeds, if a driver is going, for instance, 30 mph and then rear-ends a vehicle in front of them, it is reasonable to infer that the person would not have serious physical or mental injuries.[2] On the other hand, if a crash occurs at 60 mph, the reasonably foreseeable injuries to that person would be potentially very different—a person may become seriously injured or maimed, die, or the same may happen to a co-occupant of the vehicle. Either the physical pain or emotional pain from the crash can cause serious emotional harm, and it is not too unreasonable that a person might attempt suicide from the stress of the crash, the trauma from the crash, or the mental anguish from the physical injuries.

Applying that analogy here, it shows the relevancy of a change in speed to the foreseeability of damages. If defendant attempted to brake, *some* change in speed could occur. Even a small difference in speed could support an inference of greater harm to plaintiff. As relevance is a "very low" bar, the evidence is relevant to allow the jury to weigh the evidence and make their own inferences regarding defendant's rate of speed. *See State v. Turnidge (S059156)*, 359 Or 507, 512-13, 373 P3d 138 (2016), *cert den*, ___ US ___, 137 S Ct

---

[2] I am, of course, not stating that a serious injury cannot occur at lower speeds. Rather, I am only relaying one of many possible inferences that a jury might make in interpreting the evidence.

569 (2017) ("The threshold for admissibility under [the] relevancy standard is 'very low'—as long as the evidence, based on logic and experience, can support a reasonable inference that is material to the case, then the evidence is sufficiently relevant to be admissible, even if that is not the only inference that the evidence would support." (Citing *State v. Titus*, 328 Or 475, 480-81, 982 P2d 1133 (1999).)). Furthermore, the jury can reasonably infer what injuries—including severe emotional distress—are reasonably foreseeable from that speed. That is, even if the evidence does not conclusively make a connection to what exact speed defendant was travelling, the cellphone evidence is relevant to the "conduct" that was at issue in creating the injury—defendant's speed. Thus, there was a logical connection between defendant's use of her cellphone, her speed, and what injuries would be reasonably foreseeable.

The majority concludes that those inferences, from which the factfinder *could* have made are unpreserved. However, "[o]n review for error of law, we view the record in a manner consistent with the trial court's ruling under OEC 104(1), accepting reasonable inferences that the trial court *could* have made." *Goldsborough v. Eagle Crest Partners, Ltd.*, 314 Or 336, 342, 838 P2d 1069 (1992) (emphasis added). I would conclude that plaintiff need not preserve *every* inference a factfinder could make; rather, in accordance with our precedent, I would conclude that those reasonable inferences are reviewable.

Accordingly, I respectfully dissent.