Argued and submitted May 18, 2000, reversed and remanded for new trial
April 25, 2001

Tracy L. FULLER,
*Appellant,*

*v.*

Gregory Dale MERTEN,
*Respondent,*

*and*

Gregory Paul MERTEN
and Diane Merten,
*Defendants.*

(97-10261; CA A104704)

22 P3d 1221

Craig D. Bachman argued the cause for appellant. With him on the briefs were Jeffrey S. Love and Lane Powell Spears Lubersky LLP.

Michael H. Long argued the cause for respondent. With him on the brief was Brown, Roseta, Long, McConville, Kilcullen & Carlson.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

Plaintiff appeals from a jury verdict that awarded her damages for injuries she sustained when her car collided with defendant's van. Plaintiff assigns error to the trial court's refusal to give two requested jury instructions. She contends that the failure to give those instructions resulted in a verdict that did not compensate her for, among other things, a fractured bone in her neck. We reverse and remand.

■   We "review[ ] the evidence in the light most favorable to the establishment of the facts necessary to require giving the requested instruction." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 101 n 1, 957 P2d 147 (1998). Plaintiff had a preexisting arthritic condition that caused, among other things, the weakening of the bones, ligaments, and cartilaginous structures in some of her joints. While driving on Highway 99 north of Corvallis, plaintiff collided with defendant's van, which was stopped on the road. Plaintiff contends that she suffered a fracture at the base of her dens as a result of the collision.[1] Further, plaintiff claimed that, due to the resulting neck surgery attendant to that injury, she was forced to discontinue taking her arthritis medication, thus aggravating her arthritis and contributing to complications with her sight. The heart of the dispute on appeal is whether plaintiff's most serious injuries, which include the fracture in her neck, were the result of the accident.

At trial, plaintiff presented evidence that the impact of the collision caused her fractured neck. During plaintiff's case-in-chief, defense counsel, through cross-examination of

---

[1] Plaintiff's exhibit depicted the area where her fracture occurred as follows:

Dr. Sultany, plaintiff's treating physician, adduced testimony that, before the accident, plaintiff had developed osteoporosis, rendering her bones more brittle and, consequently, "more subject to being fractured":

"Q. [Dr. Peters] indicates in his operative report of 11/20/96 that because if the chronic use of steroids which were used to manage her chronic condition that the chronic use of steroids had caused her to develop osteoporosis?

"A. Correct.

"Q. Do you agree with that?

"A. Yes.

"* * * * *

"Q. And is [osteoporosis] a condition that affects the bones of the body in a breakdown of the bones?

"A. It's the bones, yes. It decreases bone mineral density.

"Q. It decreases the strength of the bone so it's more subject to being fractured and injured?

"A. Correct.

"Q. And she was—and that was one of the side affects of the necessary use of steroids?

"A. Correct."

Defendant's theory of the case was that plaintiff's preexisting arthritic condition had caused the dens to deteriorate to the point that it separated/fractured prior to the accident. Thus, defendant contended, the fracture could not have been caused by the impact of the subsequent collision. In cross-examining defendant's expert witness, plaintiff's counsel adduced the following testimony:

"Q. * * * isn't it possible, doctor, that what we have here, even assuming the observation of the sclerotic changes isn't accurate, it might be the beginnings of some unreported, not clinically significant, level of arthritic activity in that area of the joint?

"A. Well, yes. That's what I believe has been going on.

"Q. And the dens itself, is it not possible, is still attached but perhaps weakened until the accident? Is that not possible?

"A.    Of course it's possible. Anything's possible."

Thus, at the time the case was submitted, there was evidence from which the jury could find that (1) because of a preexisting condition, plaintiff was peculiarly susceptible to injury; and (2) the impact of the collision caused the neck fracture.

At the close of evidence, plaintiff requested that the court give Uniform Civil Jury Instruction (UCJI) No. 70.08 ("Damages—Previous Infirm Condition"). The court, without recorded explanation, rejected that request. Plaintiff also submitted UCJI 23.02 ("Multiple Causation"), which the court did not give either because plaintiff's counsel withdrew the requested instruction during an unreported discussion in chambers or because the court rejected the request.[2]

The jury returned a verdict finding the parties to be equally at fault and awarding plaintiff damages of $53,700. A review of the record demonstrates that, given the amount of the verdict, the jury necessarily did not award damages for plaintiff's fractured neck but, instead, awarded damages for plaintiff's other injuries.

■        On appeal, plaintiff assigns error to the trial court's refusal to give requested UCJI 70.08, the so-called "eggshell skull plaintiff" instruction, and UCJI 23.02, the "multiple causation" instruction. As described below, we conclude that the court erred in failing to give the "eggshell skull plaintiff" instruction and that that error necessitates a new trial. Given that conclusion, and because new or different evidence may be presented as to causation at the new trial that would bear on the propriety of giving UCJI 23.02, we do not reach and resolve plaintiff's second assignment of error challenging the failure to give that instruction.

■        We begin with well-established principles. A party is entitled to jury instructions consistent with her theory of the case, provided that the instructions (1) correctly state the law; (2) are based on the current pleadings; and (3) are supported by evidence. *Hernandez*, 327 Or at 106. Failure to give

---

[2] The parties dispute what occurred. Given our disposition, we need not resolve that dispute.

a requested jury instruction is reversible error "only if the jury instructions given by the trial court, considered as a whole, caused prejudice to the party requesting the instruction." *Id.* A party is prejudiced, in this context, if the failure to give the requested instruction "probably created an erroneous impression of the law in the minds of the members of the jury, and if that erroneous impression may have affected the outcome of the case." *Id.* at 106-07.

In this case, plaintiff requested that the court give UCJI 70.08.

"If you find that the [plaintiff/defendant] had a bodily condition that predisposed [him/her] to be more subject to injury than a person in normal health, nevertheless the [plaintiff/defendant] would be liable for any and all injuries and damage that may have been suffered by the [plaintiff/defendant] as the result of the negligence of the [plaintiff/defendant], even though those injuries, due to the prior condition, may have been greater than those that would have been suffered by another person under the same circumstances."

Defendant argues on appeal—and the trial court apparently agreed—that the evidence in this case did not support that instruction. *See Hernandez*, 327 Or at 106. We disagree.

From the evidence before the jury, it could have determined that (1) plaintiff's neck was fractured in the collision, but (2) plaintiff "had a bodily condition that predisposed her to be more subject to injury than a person in normal health." UCJI 70.08. Given that evidence, there was, at least, the very real potential that, notwithstanding causation-in-fact, the jury would fail to award plaintiff damages for the neck fracture because of her peculiar susceptibility to injury. That is, there was the potential that jurors might decide that, because the same impact would not have fractured the neck of a "normal" person, plaintiff should not recover damages for that injury.

That is precisely the circumstance that UCJI 70.08 is designed to address and remedy. That instruction, by its terms, tells the jury that it cannot engage in such "it would not have happened to a normal person" or "her neck was going to break anyway" denial or discounting of damages. *See*

*Winn v. Fry*, 77 Or App 690, 693, 714 P2d 269, *rev den* 301 Or 241 (1986) ("The basic premise regarding damages is that a defendant 'takes a plaintiff as he finds him,' * * *."). Given the evidence, plaintiff was entitled to have that instruction given to the jury. Consequently, the court erred in failing to give requested UCJI 70.08.

That error was reversible error. Defendant argues that the instructions, viewed in their entirety, were not misleading—and, particularly, that the general "substantial factor" causation instruction, UCJI 23.01,[3] effectively communicated the same principles. *See Hernandez*, 327 Or at 106-07 (failure to give requested instruction is prejudicial error if that failure "probably created an erroneous impression of law in the minds of the members of the jury and if that erroneous impression may have affected the outcome of the case"). Again, we disagree. UCJI 23.01 addresses causation, and UCJI 70.08 addresses the potential for denial or discounting of damages notwithstanding causation-in-fact. The content and effect of the two instructions is qualitatively different. Consequently, giving the former does not cure the failure to give the latter.

The failure to give requested UCJI 70.08 in this case necessitates a new trial.

Reversed and remanded for new trial.

---

[3] UCJI 23.01, as modified by the trial court and presented to the jury, provided:

"You are instructed that in order to be a cause of injury an act of omission must be a substantial factor in producing the injury. A substantial factor is an important or material factor, and not one that is significant."