1

Argued and submitted January 13; decision of Court of Appeals reversed, judgment of circuit court affirmed July 8, 2022

Michelle SCOTT,
*Petitioner on Review,*

*v.*

Leslie KESSELRING
and Kesselring Communications, LLC,
*Respondents on Review.*

(CC CV15110065) (CA A163709) (SC S068503)

513 P3d 581

Plaintiff brought a personal injury negligence action against defendants seeking damages arising from a car collision between plaintiff and defendants for physical injury and emotional distress, including distress occasioned by a subsequent suicide attempt. Defendants moved *in limine* for an order excluding evidence that defendant had been using her cellphone at the time of the collision, as either irrelevant or unfairly prejudicial, based on the argument that defendants had admitted responsibility for the accident and, although they contested the foreseeability of the harm that befell the plaintiff, the cellphone evidence was not logically relevant on that issue. The trial court denied defendants' motion, concluding that the cellphone evidence was relevant to foreseeability. After a jury verdict in plaintiff's favor, defendants appealed, and the Court of Appeals reversed and remanded, concluding that the cellphone evidence was not relevant to any trial issue. *Held*: (1) Plaintiff was required to prove that defendant's conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff, and also that defendant's conduct in fact caused the harm that plaintiff incurred to prevail in her claim; (2) if found liable, a defendant is liable for the full extent of harms, even when their extent is not foreseeable; (3) the cellphone evidence was relevant to the issue of foreseeability, which defendants contested, because defendants' conduct, including the cellphone use, was at issue and the foreseeability inquiry is whether defendants' conduct unreasonably created a foreseeable risk of the kind of harm that befell plaintiff—the suicide attempt.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

On review from the Court of Appeals.*

Travis Eiva, Eugene, argued the cause and filed the briefs for petitioner on review.

_____

\* On appeal from Clackamas County Circuit Court, Douglas Van Dyk, Judge. 308 Or App 12, 479 P3d 1063 (2020).

Julie A. Smith, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondents on review.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, and Kathryn H. Clarke, Portland, filed the *amicus curiae* brief for Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

WALTERS, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

** DeHoog, J., did not participate in the consideration or decision of this case.

**WALTERS, C. J.**

In this personal injury case, defendant rear-ended plaintiff's vehicle, and plaintiff suffered physical and emotional injuries as a result. Plaintiff claimed that her emotional injuries were so severe that she attempted to take her own life and was hospitalized. Defendant disputed responsibility for that harm on the ground that her conduct did not unreasonably create a foreseeable risk of such harm but argued that the court should exclude certain evidence of her conduct—that, immediately before the collision, she had been using her cellphone—as irrelevant and unfairly prejudicial. Reasoning that evidence of defendant's conduct could affect the jury's determination of the foreseeability question and was not unfairly prejudicial, the trial court denied defendant's motion. After a jury verdict in plaintiff's favor, the trial court entered judgment, and defendant appealed. The Court of Appeals reversed. *Scott v. Kesselring*, 308 Or App 12, 479 P3d 1063 (2020). For the reasons that follow, we agree with the trial court, affirm the judgment that it entered, and reverse the contrary decision of the Court of Appeals.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an automobile collision between defendant[1] and plaintiff. We recite the facts as alleged, denied, and admitted in the parties' pleadings and as adduced at trial. In her amended complaint, plaintiff alleged the following. On the day of the collision, it was raining heavily, and the roads were slick. Defendant knew of those conditions and that other motor vehicle accidents had occurred that day. Defendant used her cellphone to place a nonemergency call to a client and, while doing so, she crashed into the rear of plaintiff's vehicle. Plaintiff alleged that defendant was negligent in one or more of the following particulars:

---

[1] Defendant Kesselring (Kesselring) is the agent and owner of Kesselring Communications, LLC, (Communications) which is also a party to this appeal. Communications admitted that it is vicariously liable for Kesselring's acts and makes no arguments independent of Kesselring's. For readability, we refer to defendant in the singular. However, all references to defendant in the singular are attributable to both defendants.

   "a.   In failing to keep and maintain a lookout for traffic in front of her;

   "b.   In driving too fast for circumstances then there existing; and

   "c.   In following traffic at a distance that was too close in violation of ORS 811.485."

As a result of her negligence, defendant caused plaintiff physical injuries as well as severe emotional distress, including pain, anxiety, and post-traumatic stress. Plaintiff sought $97,505 in past medical expenses, $50,000 in future medical expenses, and $350,000 in noneconomic damages.

   In her amended answer, defendant responded as follows. Defendant admitted that she knew that it was raining heavily, that the roads were slick, and that other motor vehicle accidents had occurred that day. Defendant denied plaintiff's allegations that defendant was using her cellphone to place a call and that defendant was negligent in the alleged particulars, but she also reframed the issues and "admitted" that "immediately before the accident, [p]laintiff was slowing in traffic as [defendant] was looking down. When [defendant] looked back up, she was unable to stop in time and rear-ended plaintiff's 2012 Dodge SUV." Defendant also "admitted" that "she is responsible for causing the accident," but "denied" that "she is responsible for causing the full nature and extent of plaintiff's alleged injuries and damages."

   Before trial, defendant filed proposed jury instructions and a motion *in limine* asking the court to exclude all mention of her cellphone use, because "[a]ny evidence regarding [defendant's] alleged cell phone 'use' is irrelevant to any issue in this case, as [defendant has] admitted fault. Any probative value of this evidence is substantially outweighed by the risk of unfair prejudice to [d]efendant[ ]. OEC 401, 402 and 403." Defendant's requested jury instructions included one stating that she had "admitted liability," and another on foreseeability, Uniform Jury Instruction 20.03:

"A person is liable only for the reasonably foreseeable consequences of his or her actions. There are two things that must be foreseeable. First, the plaintiff must be within the general class of persons that one reasonably would

anticipate might be threatened by the defendant's conduct. Second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct."

At the hearing on defendant's motion *in limine*, the court questioned the parties about the issues for trial, and, in that context, the parties discussed defendant's requested foreseeability instruction. Plaintiff did not object to the instruction but noted that including a foreseeability instruction would not make sense in the context of an admitted negligence case:

> "I can't tell what the defendant is admitting and what the defendant is not admitting. All—there's an air of confusion and avoidance about what the defendant is or is not admitting. Is the defendant admitting that 'I caused the crash, I caused injury, I caused damage, and it was all foreseeable,' and the only question is how to compensate the plaintiff.

> "Or is the defendant saying, 'I admit I caused the crash, don't ask me how,' and then, 'I get to contest every single other issue of common law negligence beyond that.' And if that's what the defendant is asking for then plaintiff is asking for the opportunity to demonstrate—to put on proof of all of the elements of common law negligence."

Defendant argued in response that she had admitted "negligence" and that she had "caused injury to plaintiff." Defendant stated that she was contesting "the extent of plaintiff's injuries" and the foreseeability of plaintiff's suicide attempt:

> "I am arguing foreseeability. ✳✳✳

> "✳✳✳✳✳

> "Yes. UCJI 20.03, on the suicide attempt, we have admitted the defendant was negligent. We have admitted the defendant caused injury to plaintiff.

> "What we are contesting is the extent of the injuries, and that it was not foreseeable that she would attempt suicide following this accident."

Defendant argued that her use of a cellphone did not affect whether it was "foreseeable" that plaintiff would attempt suicide, making the cellphone use irrelevant and therefore

inadmissible. In addition, defendant argued that the cell-phone evidence was unfairly prejudicial under OEC 403.

The trial court denied defendant's motion *in limine,* explaining as follows: "I do consider that the degree of risk *** bears on the scope of harms that might reasonably be anticipated. I've alluded to that with several of my remarks. And I think [that the cellphone use] is a circumstance here that is germane to that consideration." Among the "remarks" to which the court referred were the following:

> "Cellphone use could result in a really bad accident on the freeway so the scope of foreseeability, you know, might even extend to post-traumatic stress, might even extend that far. If you hit somebody hard enough going that fast and you know what, you drive around distracted, there's a degree of foreseeability about the scope of the harm.
>
> "*****
>
> "[I]t becomes a question of foreseeability of harm and scope of harm that a person might anticipate in a context like this.
>
> "*****
>
> "[T]he type of risk that *** you undertake correlates with the foreseeability of the loss. The greater the disregard, the greater the foreseeability of the loss. *** The more limited in scope the disregard or the negligence, the less foreseeability attaches to the loss.
>
> "*****
>
> "Now, if we're 40 miles over the speed limit, it's different than if we're 20 miles over the speed limit. Both might be negligent, but the one might invoke a scope of loss or harm greater than the other and so foreseeability would seem to attach to such a consideration."

The trial court also concluded that the probative value of the cellphone evidence was not substantially outweighed by unfair prejudice. It allowed *voir dire* questions regarding cell-phone use and allowed evidence about cellphone use at trial "as the backdrop of the circumstances of the accident[, n]ot to dwell on it."

At trial, plaintiff adduced evidence of defendant's conduct without objection. There was testimony that defendant was driving at least 45 miles per hour at the time of the collision, that she was aware that a different collision had occurred in front of her, and that she was driving a loaner car that did not have a hands-free phone set up. Defendant testified that, just before the collision, she had looked down at her cellphone to search for a client contact and place a call.

During trial, plaintiff testified that six months after the accident, she was still experiencing physical pain from the accident, having trouble sleeping, and having difficulty keeping up with normal household activities. As plaintiff testified:

> "I wasn't getting better and I wasn't getting better, and I just kept—I just felt like—I was trying to keep up, trying to keep a happy smile on my face, trying to keep up with like, you know, appearances like everything's fine, everything's fine. But inside I wasn't fine. I wasn't fine at all. And it really—I just felt like I was in a downward spiral of pain of hopelessness and despair was how I felt."

On cross-examination, defendant suggested that plaintiff's physical pain had abated by the time of her suicide attempt and that she had acted for an unrelated reason—that she felt unappreciated by her husband—a circumstance that defendant did not cause. In closing, defendant made the following argument:

> "[Plaintiff's husband's] lack of understanding is [defendant's] fault? [Plaintiff's] marital problems caused by [defendant]? A suicide attempt caused by [defendant]?
>
> "* * * * *
>
> "[Plaintiff is] trying to manage everything while essentially operating as a single parent because her husband's not there. And not only is he not there, he's not real supportive or understanding. Is that [defendant's] fault? [Defendant] is only responsible for what she caused.
>
> "[Plaintiff's counsel] asked you, 'How could you conclude the suicide attempt was not a result of this accident?' Well, I am going to tell you how. And it's right here on this board. It is the law. And is the jury instruction you will

have with you in writing back in the jury room, right here, the last sentence, 'The harm suffered must be within the general class of harm that one reasonably would anticipate might result from the defendant's conduct.' 'Foreseeability' is the name of the instruction. What is foreseeable? A person who's liable only for the reasonably foreseeable consequences of his or her actions, reasonably foreseeable.

"Could it be predicted? Could it be anticipated? If you rear end someone on the highway, is it reasonably foreseeable that they're going to attempt suicide? *** Was it reasonably foreseeable that she would attempt suicide as a result of this car accident?"

The jury awarded plaintiff $41,000 in economic damages, rather than the $97,505 that she had sought, and $200,000 in noneconomic damages, rather than the $350,000 that she had sought.[2] The trial court entered judgment in those amounts and defendant appealed, assigning error to the trial court's decision to admit evidence that defendant had used her cellphone immediately before the collision.

The Court of Appeals viewed the question before it as "whether the precise reason that defendant was negligent— that she was using her cellphone moments before colliding with plaintiff's car—is relevant to the question of whether the particular harm that befell plaintiff—physical and emotional trauma—was foreseeable." *Scott*, 308 Or App at 19 (internal quotation omitted). The court answered that question in the negative, concluding that the trial court had erred and that a new trial was necessary. *Id*. at 20, 23.

We allowed plaintiff's petition for review.[3]

---

[2] The $97,505 figure that plaintiff alleged in economic damages included the cost of psychiatric treatment arising from plaintiff's suicide attempt. The difference between that sum and the sum that the jury awarded almost exactly reflects the cost of that psychiatric treatment. As defendant argues, the jury may well have chosen not to award plaintiff economic damages related to her suicide attempt.

[3] In addition to the evidentiary issue that we discuss, plaintiff also asks that we address another issue, but only if we affirm the decision of the Court of Appeals and order a new trial. In that event, plaintiff asks that we conclude that the Court of Appeals erred in its failure to address her cross-assignment of error on an intermediate ruling. Because we reverse the decision of the Court of Appeals, we do not reach the contingent issue that plaintiff raises.

## II.   LEGAL BACKGROUND

Before we begin our analysis of the evidentiary question presented, it is helpful to describe the nature of a negligence claim. Over time, as we explained in *Sloan v. Providence Health System-Oregon*, 364 Or 635, 643-44, 437 P3d 1097 (2019), this court has changed the way it has described what a plaintiff must prove to make out such a claim:

> "Traditionally, to prevail on a negligence claim, a plaintiff had to prove that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the breach was a factual cause and (4) a legal cause (or proximate cause) of (5) harm to the plaintiff measurable in damages. *Aiken v. Shell Oil Co. et al and Huey*, 219 Or 523, 535-36, 348 P2d 51 (1959) ('One of the old and simple definitions of negligence is: "There must be a duty on the defendant; a failure to perform that duty; and the failure to perform that duty must be the proximate cause of injury and damage to the plaintiff."'). But, in *Fazzolari* [*v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987)], this court reformulated the elements for an ordinary negligence claim, stating:
>
>> "'[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'
>
> "*Fazzolari*, 303 Or at 17. Thus, when asserting an ordinary negligence claim, a plaintiff must establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff."

*Sloan*, 364 Or at 643.

In *Fazzolari*, the court examined how courts and scholars had confronted the age-old problem of how to state the "bounds of liability" and conducted an extensive review of the evolution of the problem and the "vast amount of legal literature." 303 Or at 4-6. The court discussed the concepts of duty, proximate cause, and scope of duty and found them bound up in and used as "shorthand statement[s] of []

conclusion[s], "verbal crutch[es]," or "convenient label[s]," to express "the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.* at 7-9 (internal quotation marks omitted). The court paid particular attention to a then-recent Oregon case that had turned away from the use of those concepts—*Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970)—a case that the *Fazzolari* court characterized as making "foreseeable risk the test both of negligent conduct and of liability for its consequences without phrasing the test in terms either of causation or of duty." 303 Or at 14. In *Fazzolari*, the court completed the turn that *Stewart* had begun, deliberately stepping away from what it characterized as the "neat division of issues" and the "duty, breach, cause" formula. *Id.* at 4, 15. The court recognized that those discrete issues could have continued significance when the parties invoke a status, relationship, or particular standard of conduct that defines or limits the defendant's duty. But, without such a status, relationship, or particular standard, the court reformulated the question of the bounds of a defendant's liability as a question of whether the defendant's "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Id.* at 17.

In that formulation:

"[The] role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party."

*Id.* In *Fazzolari,* the court quoted *Stewart*, to emphasize the importance of the jury's role:

"'The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it.'"

*Id.* at 17-18 (quoting *Stewart*, 255 Or at 607). The jury's assessment of foreseeability, that is, whether a particular

defendant's conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff, is an aspect of a determination of liability (together with factual causation, as explained further below):

> "[A]n actor should not be liable unless he is at fault in the legal sense. Although legal fault is not the exact equivalent of moral fault, the predicate is blameworthiness in some sense; the actor being regarded as blameworthy if his conduct is, according to community standards, generally considered as creating a danger to persons in the situation in which the plaintiff finds himself."

*Stewart*, 255 Or at 608 (footnotes omitted).

Since *Fazzolari,* this court has, on occasion, discussed how its reformulation in that case lines up with the traditional elements of a negligence claim. In *Piazza v. Kellim*, 360 Or 58, 70, 377 P3d 492 (2016), this court said the following:

> "Foreseeability plays a role in at least two overlapping common-law negligence determinations: (1) whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct—formerly described in terms of 'duty' and 'breach' as measures of negligent conduct; and (2) whether, because the risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff—a concept that traditionally was referred to as 'proximate' cause and which, in our current analytical framework, operates as a legal limit on the scope of a defendant's liability for negligent conduct."

And, in *Sloan*, this court included that quotation from *Piazza* and took another stab at explaining the relationship between the traditional elements of a negligence claim and the *Fazzolari* reformulation:

> "In ordinary negligence claims, foreseeability plays a role in determining whether a defendant's conduct is negligent (in other words, in setting a defendant's standard of care) and whether a defendant should be liable for particular consequences of their negligent conduct (in other words, establishing the scope of a defendant's liability)."

*Sloan,* 364 Or at 643.

But *Fazzolari*'s formulation stands on its own and bears repeating:

> "[U]nless the parties invoke a status, relationship or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

303 Or at 17. In this case, the parties do not invoke a particular status, relationship, or standard of conduct, and we therefore consider plaintiff's claim to be "an ordinary negligence claim," in which plaintiff was required to establish that defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Id.*

To prove liability in an ordinary negligence claim, a plaintiff also must prove factual causation. *See Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004) (explaining that "[a] plaintiff, of course, still must prove 'factual' or 'but-for' causation—that there is a causal link between the defendant's conduct and the plaintiff's harm"). "Foreseeability (what prospectively might happen) is considered separately from causation (what retrospectively did happen)." *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015). Thus, weaving together the requirements of an ordinary negligence claim, plaintiff in this case was required to prove that (1) defendant's conduct (2) unreasonably (3) created a foreseeable risk (4) to a protected interest (5) of the kind of harm that befell the plaintiff, and (6) that defendant's conduct in fact caused the harm that plaintiff incurred.

Before we embark on an analysis of the evidence relevant to that claim, an additional note is necessary. In this case, neither party takes the position that, on this record, any of those aspects of plaintiff's claim present matters of law for the court. In particular, defendant does not take the position that the emotional distress that plaintiff suffered as a result of her suicide attempt was not a harm to a legally protected interest or that, *as a matter of law*, emotional

distress severe enough to lead to a suicide attempt is not a foreseeable consequence of the alleged conduct. Rather, defendant takes the position, as she did below, that the foreseeability of that risk of harm was a question for the jury, and that the evidence of her cellphone use was irrelevant to that factual determination. Similarly, plaintiff does not raise an objection to having the jury consider the question of foreseeability, as she understands that question.

## III.   ANALYSIS

With that background in mind, we turn to the specifics of this case and the question we must answer—whether the trial court erred in ruling that evidence that defendant was using her cellphone at the time of the collision was admissible on the issue of foreseeability. Defendant contends that that ruling was in error because she had admitted "liability," "fault," and "negligence," rendering evidence of "the elements of" plaintiff's claim, including "most aspects of foreseeability," irrelevant. Defendant contends that, because she admitted responsibility for causing a rear-end collision, the only "aspect" of foreseeability at issue was whether it was foreseeable that such a collision would cause the "extent" of the harm that plaintiff suffered, particularly her suicide attempt. Defendant submits that her cellphone use was not relevant to that question, and, even if it was, its probative value was substantially outweighed by the risk of unfair prejudice.

Plaintiff argues that this is not an admitted liability case. Plaintiff takes the position that, by contesting foreseeability, defendant put her conduct at issue, that determining whether that conduct unreasonably created a foreseeable risk of the kind of harm that befell her is a blended factual and normative inquiry, and that defendant's cellphone use was relevant to that inquiry.

A.  *The Nature of the Foreseeability Inquiry and its Implications.*

Because defendant's argument starts with the premise that she admitted "liability," "fault," and "negligence," it is helpful to begin our analysis with the facts that plaintiff alleged and was required to prove to establish her

negligence claim. Plaintiff alleged that, on the day of the collision, it was raining heavily and the roads were slick, that defendant knew of those conditions and that other motor vehicle accidents had happened that day, that defendant "used her cellphone to place a non-emergen[cy] call to a client," and that defendant rear-ended plaintiff's vehicle. Defendant admitted all those allegations, except her cellphone use. Plaintiff did not allege, in *Fazzolari* terms, that defendant's conduct "unreasonably created a foreseeable risk" of the kind of harm that befell her. Instead, plaintiff alleged that defendant was "negligent" in failing to keep and maintain a lookout, in driving too fast, and in following too closely and that defendant's use of her cellphone was a fact supporting plaintiff's claim that defendant was negligent in those particulars. Defendant *denied* those allegations. Plaintiff alleged that, as a result of the collision and impact, she suffered physical injury, post-traumatic stress, and anxiety. Defendant also denied those allegations. However, defendant also made "admissions" and "denials" that varied from plaintiff's allegations. Defendant "admitted" that, immediately before the accident, she was looking down and was unable to stop and that she was "responsible" for causing the "accident." Defendant "denied" that she was "responsible for causing the full nature and extent of plaintiff's alleged injuries and damages."

Defendant's answer does not constitute an admission of "liability," "fault," or "negligence." Defendant did not admit that she was "negligent" in the alleged particulars or that plaintiff was entitled to a judgment on her "negligence" claim. Defendant admitted "responsibility," but only for "causing the accident," not for causing plaintiff's injuries. A person can cause "an accident" without being "at fault" or legally responsible for the consequences, and a person can be legally responsible for a collision, without being legally responsible for a plaintiff's injuries. Defendant did not admit that she engaged in the conduct or drove in the manner that plaintiff alleged, that her conduct unreasonably created a foreseeable risk of harm to plaintiff, or that her conduct in fact caused the harm that plaintiff alleged she had incurred. Defendant's denial of responsibility for causing the "full nature and extent of plaintiff's alleged injuries"

was not an admission that she was legally liable for some or any of plaintiff's injuries.

In her memorandum in support of her pretrial motion *in limine,* defendant argued that she had "admitted fault," and she submitted a proposed jury instruction admitting "liability." At the hearing on defendant's motion, the trial court inquired about the matters that remained for trial, and defendant responded, not that she had admitted "fault" or "liability," but that she had admitted "negligence." In her filings and argument, defendant was entitled to admit matters that she had not admitted in her answer, but it is not clear that she intended to do so; if she did, she did not do so with precision. By stating that defendant admitted that she was "negligent," defendant may have intended to admit that her conduct was unreasonable, but it is not clear she used that term of art to take a new position and to admit more than she had admitted in her answer—that she accepted responsibility for rear-ending plaintiff's vehicle and causing the collision. Be that as it may, what is most significant for our purposes is that, on questioning by the court, defendant acknowledged that, despite her admissions, she was contesting "foreseeability"—and the trial court understood her argument on that issue in the context of the foreseeability instruction she requested. To reiterate, defendant requested, and the trial court gave, the following jury instruction:

> "A person is liable only for the reasonably foreseeable consequences of his or her actions. There are two things that must be foreseeable. First, the plaintiff must be within the general class of persons that one reasonably would anticipate might be threatened by the defendant's conduct. Second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct."

In sum, although defendant has taken the position on review that she admitted "liability," the pleadings and argument to the trial court make it clear that defendant admitted something less than that. "Foreseeability" is an aspect of liability, and, although defendant admitted some level of responsibility for the events that led to plaintiff's injuries, defendant continued to dispute foreseeability all the way through trial.

We move, then, to defendant's argument that she admitted most "aspects" of foreseeability, making evidence of her conduct irrelevant. In her briefing in this court, defendant contends that foreseeability plays a number of roles and that, in this case, her admissions changed the nature of the foreseeability question. According to defendant:

> "The first role that foreseeability plays is in determining whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct—formerly described in terms of 'duty' and 'breach' as measures of negligent conduct."

(Internal quotation omitted.) That role, defendant contends, is the "blameworthiness" aspect of foreseeability. For defendant, the second role that foreseeability plays is in determining whether "'the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff—a concept that traditionally was referred to as "proximate" cause and which *** operates as a legal limit on the *scope* of a defendant's liability for negligent conduct.'" (Quoting *Piazza*, 360 Or at 70; emphasis and ellipses defendant's.) In defendant's view, that second role often "focuses on the foreseeability of the harm that *initially* befell a particular plaintiff," but also permits an inquiry about "whether the *extent* of the plaintiff's harm was reasonably foreseeable." (Emphases defendant's.) According to defendant, her "judicial admissions conclusively established the 'blameworthiness' aspect of foreseeability as well as the threshold liability limiting aspect, *i.e.*, the foreseeability of the harm that initially befell the plaintiff." Defendant contends that because she admitted responsibility for causing a rear-end collision, the only "aspect" of foreseeability at issue was whether it was foreseeable that such a collision would cause the "extent" of the harm plaintiff suffered, particularly her suicide attempt.

We agree with defendant that this court has described foreseeability as "playing a role" in overlapping common-law negligence determinations. We have not described the role of foreseeability in the same way that defendant does, but even if defendant were correct in her description, a question that we do not address, she is incorrect in the conclusion that she draws from it. To start, defendant is incorrect in

arguing that there is an "aspect" of foreseeability that considers only the foreseeability of the "extent" of a plaintiff's injuries. The general rule—and the rule in Oregon—is that when a defendant is liable for the *type* of harm that a plaintiff suffers, the defendant is liable for the entirety of that harm, even when the *extent* of that harm is not foreseeable. As the *Restatement (Third) of Torts* puts it:

> "If the type of harm that occurs is within the scope of the risk, the defendant is liable for all such harm caused, regardless of its extent. Even when a foreseeability standard is employed for scope of liability, the fact that the actor neither foresaw nor should have foreseen the extent of harm caused by the tortious conduct does not affect the actor's liability for the harm."

*Restatement (Third) of Torts: Physical and Emotional Harm*, § 29 comment p (2010). *See Fazzolari,* 303 Or at 17 (requiring consideration of whether conduct created foreseeable risk of "the kind of harm that befell the plaintiff"); *Winn v. Fry,* 77 Or App 690, 693, 714 P2d 269 (1986) (explaining that "[t]he basic premise regarding damages is that a defendant takes the plaintiff as he finds him") (internal quotation marks omitted); *Crimson v. Parks*, 238 Or App 312, 314, 317, 241 P3d 1200 (2010) (explaining that a plaintiff with a genetic condition exacerbated by a car accident was entitled to a "'previous infirm condition' instruction [because it] is designed to prevent the jury from discounting damages because a 'normal' person would not have suffered the same extent of damages as the plaintiff"). *Accord*, *Fuller v. Merten*, 173 Or App 592, 22 P3d 1221 (2001) (trial court erred in not giving "previous infirm condition" instruction in circumstance in which the plaintiff alleged that the collision caused break in plaintiff's neck that ordinarily would not be caused by that kind of collision).

        In Oregon, all persons have a legally protected interest to be "free from physical harm at the hands of another." *Philibert v. Kluser*, 360 Or 698, 703, 385 P3d 1038 (2016) (internal quotation omitted). And, when negligent conduct causes physical injury, Oregon law also allows the plaintiff to recover damages for emotional distress. *Id.*; *see also Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 452, 412 P3d 133 (2018) ("[I]f the plaintiff establishes a negligence

claim based on physical injury * * *, then, generally speaking, the pain for which recovery is allowed includes virtually any form of conscious suffering, both emotional and physical." (Internal quotation omitted.)). Thus, in this case, defendant was liable for the physical injuries that she caused plaintiff to suffer even if those injuries were more extensive than she reasonably could have anticipated. Defendant accepted that proposition; she did not object or except to an instruction that so informed the jury.[4]

Defendant also was liable for the emotional distress that she caused plaintiff to suffer, even if plaintiff was more prone to suffer distress, anxiety, or depression than another person might be. The rule that a defendant is responsible for the "full extent" of a plaintiff's injuries, even though those injuries would not be foreseeable, extends not only to pre-existing physical injuries, but also to unanticipated harm and emotional injuries. *See Restatement* § 31 comment b ("a plaintiff need not have a preexisting condition to recover for physical or emotional harm that is of unforeseeable magnitude").[5]

---

[4] The trial court instructed the jury:

"If you find that the Plaintiff had a bodily condition that predisposed her to be more subject to injury than a person in normal health, nevertheless the defendant would be liable for any and all injuries and damage that may have been suffered by the Plaintiff as the result of the negligence of the defendant even though those injuries due to the prior condition may have been greater than those that would have been suffered by another person under the same circumstances."

[5] Defendant cites *Wallach v. Allstate Ins. Co.*, 344 Or 314, 180 P3d 19 (2008) for the proposition that foreseeability can limit a defendant's liability for the extent of the harm that a plaintiff suffers. That is an incorrect understanding of the case. There, the plaintiff was injured by a phantom driver and sued her insurer for coverage. Before trial, the plaintiff was again injured in two subsequent accidents. *Id.* at 316. At trial on coverage for the first accident, the court instructed the jury that the insurer was liable for all of the plaintiff's harm, including harm incurred in the other two accidents, as long as the subsequent harm would not have occurred but for the first accident. *Id.* at 317-18. This court held that the instruction was erroneous in two separate but related respects. *Id.* at 319. First, the instruction was "at odds with the general rule that a defendant is liable only for the foreseeable consequences of his or her negligence," because it required only that the subsequent injuries be causally connected to the first accident and not that they be foreseeable:

"Under the trial court's instruction, the jury could hold Allstate liable for all aggravation damages that were causally connected to the first driver's negligence no matter how unforeseeable those damages were. Such unlimited liability is contrary to Oregon negligence law."

That rule applies, however, only when a defendant is liable for the type or kind of harm that the plaintiff suffers. *Restatement* § 31 comment b (stating rule as applicable *if* the *type of harm* that occurs is within the scope of the risk). As articulated by Dobbs, "Courts assume a radical distinction between the *nature* of a harm and its *extent.*" Dan Dobbs, Paul T. Hayden & Ellen M. Bublick, 1 *The Law of Torts* § 206 (2d ed 2011) (emphases in original). *Harper, James and Gray on Torts* discusses the basis for the distinction:

> "There are cases where the defendant has been negligent toward the plaintiff or his property (even under the restrictive view of the scope of duty) and where injury has come through the very hazard that made the conduct negligent, but where because the state is set for it the *extent* of the injury passes all bounds of reasonable anticipation. A milk deliverer, for instance, negligently leaves a bottle with a chipped lip, and this scratches a [person's] hand as she takes it in. All this is easily within the range of foresight. This particular [person] however, has a blood condition so that what to most [people] would be a trivial scratch leads to blood poisoning and death. * * * In these and like cases of what well may be called direct consequences, the courts generally hold the defendant liable for the full extent of the injury without regard to foreseeability.
>
> "This result has been attacked as one quite inconsistent with the prevailing limitation on the scope of duty to interests and hazards that are foreseeable. * * * But the criticism stems from too much insistence on mechanical consistency. There is no reason to apply the restrictive foreseeability test to all problems just because it is applied to some. There are strong reasons, both within the framework of fault and to secure more effective compensation, for holding a wrongdoer liable for all injuries [the wrongdoer]

---

*Id*. at 320. Second, we noted that "[u]nder Oregon law, a tortfeasor is responsible to the extent that his or her negligence aggravates a preexisting condition." *Id*. at 321. We explained that if, in the case at hand, "the second accident was not a foreseeable consequence of the first, then the law allocates responsibility for any aggravation of plaintiff's preexisting condition to the second tortfeasor, not the first." *Id*. Thus, *Wallach* coheres with the principal that a defendant is liable for the *full extent* of harms that she causes. The foreseeability issue in *Wallach* was not an issue of severity, it was an issue about whether an initial tortfeasor could be held liable for injuries that were aggravated by the negligence of a subsequent tortfeasor.

causes innocent people, and for rejecting the foreseeability limitation altogether. *Counter considerations have prevailed to limit the risks of negligent conduct to persons and types of hazard.*"

Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, 4 *Harper, James and Gray on Torts* § 20.5, 175-77 (3d ed 2007) (footnote omitted; first emphasis in original; second emphasis added). Accordingly, courts, including Oregon courts, have made a distinction between the *extent* of a plaintiff's harm, which need not be foreseeable, and the *type* of harm that befell the plaintiff, which may raise that issue. *Compare Winn*, 77 Or App at 693 (explaining premise that a defendant takes the plaintiff as is) with *Fazzolari,* 303 Or at 17 (requiring foreseeability of "kind of harm" that befell the plaintiff).

One context in which the issue of foreseeability arises in Oregon is in cases in which a plaintiff's initial injury is followed by subsequent conduct and subsequent injury. In such cases, the defendants may argue that the subsequent third-party conduct was not foreseeable and that they should not be held liable for the subsequent harm. *Sloan* is an example of a case in which the defendants made such an argument. There, the plaintiff alleged that the defendant doctors were negligent in failing to treat her when she was a patient at the facility where they worked and that, as a result, she died at a second facility to which she had been released. The defendants argued that the plaintiff's death could have been caused by negligence at that second facility, and the plaintiff requested the following jury instruction:

> "If you find the defendant was negligent and that such negligence caused injury to the plaintiff, the defendant would also be liable for any additional injury caused by the subsequent conduct of another person or entity, even if such conduct was negligent or wrongful, as long as the subsequent conduct and risk of additional injury were reasonably foreseeable."

*Sloan*, 364 Or at 646. This court held that that instruction correctly stated the law. *Id*. at 647.

In this case, a court could understand defendant's argument that she should not be held liable for plaintiff's attempted suicide as an argument that defendant should not be held liable for subsequent conduct—here, the subsequent conduct of plaintiff herself. Viewed as an argument about the foreseeability of the *extent* of plaintiff's harm, defendant's foreseeability argument is not legally viable for the reasons discussed above. However, viewed as an argument about the foreseeability of the general *kind* of harm that plaintiff suffered, defendant's foreseeability argument was not legally foreclosed, at least here, where plaintiff did not so argue or object to having the jury consider the issue.[6]

Giving defendant the benefit of an argument that she could have made, we rephrase her contention as a contention that, having admitted responsibility for causing the rear-end collision, the foreseeability question for the jury was whether it was foreseeable that such a collision would cause the "kind" of harm she suffered, particularly her suicide attempt. With that understanding of defendant's argument, we now consider defendant's contention that her conduct—the cause of the collision—is not relevant to that inquiry. She is wrong.

In subsequent conduct cases in which foreseeability is an issue, the jury is tasked with deciding the same

---

[6] This court has not decided whether a plaintiff's suicide or attempted suicide would present a matter of the "extent" of a plaintiff's injuries (precluding consideration of foreseeability), a matter of "subsequent conduct" (permitting a consideration of foreseeability), or a matter of comparable fault. In other jurisdictions, juries have been permitted to consider the foreseeability of a plaintiff's suicide, not only when the foreseeable danger of suicide was the principal risk that made the defendant's conduct negligent, such as, for example, when a hospital leaves a suicidal patient unsupervised, but also where suicide or attempted suicide was arguably within the scope of a more obvious risk that made the defendant's conduct negligent. For instance, juries have been permitted to consider the foreseeability of a plaintiff's suicide after a medical center negligently misdiagnosed plaintiff's HIV status, *Cramer v. Slater*, 146 Idaho 868, 876, 204 P3d 508, 516 (2009) (whether misdiagnosis was cause of suicide was question of fact for the jury), the foreseeability of a plaintiff's suicide after suffering a serious brain injury in an automobile accident caused by the defendant, *Fuller v. Preis*, 35 NY2d 425, 427, 322 NE2d 263, 264 (1974) (whether defendant's negligence caused plaintiff's death by suicide was an issue for the jury), and the foreseeability of a plaintiff being shot at his own request after being seriously injured in a motorcycle accident caused by a manufacturer's defect, *Zygmaniak v. Kawasaki Motors Corp. USA*, 131 NJ Sup 403, 405, 330 A2d 56, 58 (1974) (whether defendant motorcycle manufacturer caused motorcyclist's death was an issue for the jury).

general question as that presented in other foreseeability cases—whether the defendant's conduct unreasonably created a foreseeable risk of the type of harm that resulted. In subsequent conduct cases, the specific application of that question asks whether the defendant's conduct unreasonably created a foreseeable risk of the subsequent conduct, and the type of harm that resulted from it. *See Chapman*, 358 Or at 209-15 (discussing subsequent conduct cases and the evidence necessary to present jury question on foreseeability). In subsequent conduct cases, "'The community's judgment, usually given voice by a jury, determines whether the defendant's conduct met that threshold in the factual circumstances of any particular case.'" *Piazza*, 360 Or at 74 (quoting *Chapman*, 358 Or at 206). That, as plaintiff suggests, is "a blended factual and normative inquiry." *Piazza*, 360 Or at 94. When a defendant admits responsibility for initial harm, but contests liability for subsequent conduct and harm, the foreseeability inquiry is still an inquiry about defendant's conduct and whether it unreasonably created a foreseeable risk. That inquiry simply cannot be conducted without considering the nature of the defendant's conduct.

Thus, in this case, even if we construe defendant's argument as a challenge to the foreseeability of the *type* (rather than the extent) of harm plaintiff suffered—a later suicide attempt—defendant's conduct is an indispensable part of the foreseeability analysis. And, as we will explain, defendant's admission that she caused the rear-end collision does not make it otherwise.

Defendant contends that this case is different than other foreseeability cases in that she admitted responsibility for a rear-end accident and, therefore, all the jury needed to know was that there was "a rear-end car accident on the freeway." Defendant posits that "[t]he foreseeable consequences of rear-ending another car are, logically speaking, the same regardless of whether the person doing the rear-ending is distracted, asleep, intoxicated, or simply failed to react in time."

We disagree. First, defendant may be factually incorrect on that point. The foreseeable consequences of rear-ending another car may be different depending on the

force of the impact, and differing conduct may present differing risks of forceful impact. But defendant's argument suffers from a more fundamental problem.

The immediate physical consequence of a defendant's conduct—here, the fact of a rear-end collision—is not the starting point in the foreseeability inquiry as correctly understood. We start, as *Fazzolari* instructs, with the defendant's "conduct" and the reasonableness of the foreseeable risks that it created. *See Fazzolari*, 303 Or at 17 ("liability for harm actually resulting from defendant's *conduct* properly depends on whether that *conduct* unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff" (emphases added)). Accordingly, as the subsequent conduct cases discussed above illustrate, a foreseeability inquiry does not ask a jury to begin with the consequences of a defendant's conduct—what actually happened. Rather, foreseeability is a prospective inquiry that asks a jury to consider what could have happened. *Chapman,* 358 Or at 206. The uniform jury instruction that defendant requested and that the trial court gave correctly told the jury as much. It told the jury that "the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the *defendant's conduct*." (Emphasis added.) Different conduct may create different risks of harm, and a jury may well reach different conclusions about whether the defendant unreasonably created a foreseeable risk depending on whether the defendant was "distracted, asleep, intoxicated, or simply failed to react in time." In this case, defendant's admission that her conduct caused a rear-end collision was an admission that, as it happened, her conduct had a particular consequence, a rear-end collision. That factual admission did not, however, take the pertinent question of the range of foreseeable consequences from the jury.

In concluding that, in this case, defendant's admission did not preclude the jury's consideration of foreseeability, we do not mean to imply that, in other ordinary negligence cases, a defendant cannot make factual admissions that may narrow the issues and the facts relevant to those issues. For instance, in *Lasley v. Combined Transport, Inc.*, 351 Or 1, 4, 261 P3d 1215 (2011), an ordinary negligence

case, a corporate defendant had spilled glass on the freeway, creating dangerous conditions; the driver defendant had driven negligently and collided with the plaintiff's decedent, who was stopped in traffic behind the spilled glass. The corporate defendant contended that the trial court had erred in excluding evidence that the driver had been intoxicated at the time of the collision. The corporate defendant contended that that evidence was relevant to the issue of whether the corporation's negligence was a substantial factor in causing the plaintiff's injuries and to the issue of comparative fault. The driver admitted that she had driven at an unreasonable speed and that her negligence was a cause in fact of the plaintiff's injuries. The driver had not contested foreseeability, and this court held that, as a result of the driver's admissions, evidence of the driver's intoxication was not relevant to causation; it was, however, relevant on the issue of comparative fault. *Id.* at 27. The legal and evidentiary effect of factual admissions will depend on the circumstances of each case. Our point is not that such admissions are inconsequential; rather, it is that, in this case, defendant's factual admissions and the legal positions did not have the effect for which she argues. Defendant's admissions may have taken the questions of whether a collision occurred, or even whether defendant drove unreasonably, off the table. However, the fact that defendant challenged the foreseeability of the kind of harm that befell the plaintiff—a suicide attempt—meant that the jury was still required to determine whether defendant's conduct unreasonably created a foreseeable risk of that kind of harm.

B.  *The Admissibility of the Cellphone Evidence on the Question of Foreseeability.*

Understanding the nature of the foreseeability question that defendant raised and that the jury was required to consider, we arrive at the question of whether the trial court erred in ruling that evidence of defendant's cellphone use was relevant to that question. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. We review that OEC 401 ruling for legal error. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Having already concluded that, by contesting fore-seeability, defendant put her conduct at issue, the relevancy question in this case is a straightforward one. A driver's decision to look away from the road to make a cellphone call to a client could affect a jury's determination of whether the driver unreasonably created a foreseeable risk of a horrific collision and significant physical injury, even loss of life. That evidence also could affect a jury's determination of whether that conduct unreasonably created a foreseeable risk of sig-nificant emotional distress, even distress so severe that it would cause a person to attempt suicide. And a decision to use a cellphone could be considered less reasonable and the risk more foreseeable than would a driver's glancing away for a reason that did not require the same mental attention. Here, the jury was entitled to hear, and without objection did hear, evidence beyond the fact of the rear-end collision. The jury heard evidence of the conditions that existed at the time and the conduct in which defendant engaged, including her speed, the fact that she looked down, and the fact that she looked down to place a cellphone call to a client. That conduct evidence was relevant because it could have had a tendency to affect the jury's determination of whether the conduct unreasonably created a foreseeable risk of the kind of harm that plaintiff suffered.

Defendant, understandably, may have been con-cerned that a jury might consider her cellphone use more blameworthy than other aspects of her conduct and misuse that evidence to increase the damages awarded. Had defen-dants not contested foreseeability, then evidence of defen-dant's conduct, including her cellphone use, may not have been relevant. For instance, defendant could have admit-ted the foreseeability of a suicide attempt, but argued, as she argued in closing, that her conduct was not a cause-in-fact of plaintiff's attempt. Defendant could have argued that the only cause of plaintiff's attempt was her insecure relationship with her husband. Had defendant taken that tack, the trial court may have viewed the relevancy of defen-dant's conduct, including her cellphone use, differently. *See Lasley*, 351 Or at 11 (evidence of intoxication not relevant on issue of factual causation). But here, defendant did con-test the foreseeability of plaintiff's suicide attempt and

evidence of the defendant's conduct was relevant to that issue.

That brings us to the final question of whether the cellphone evidence should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice." OEC 403. We review the trial court's determination under OEC 403 for abuse of discretion. *Titus*, 328 Or at 481.

We understand that evidence of defendant's cellphone use could have caused a jury to consider her behavior riskier than the jury might have in the absence of that evidence, but the fact that evidence may make it more likely that a jury will decide for or against a party does not determine whether evidence is "unfairly" prejudicial. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 71, 23 P3d 320 (2001) (explaining that "relevant evidence often has the effect of proving one party's position while harming the other's"). When a defendant's conduct is at issue, there is nothing particularly unfair about painting that conduct in all its details, and it could be unfair not to do so. *Cf. State v. Davis*, 336 Or 19, 34, 77 P3d 1111 (2003) (concluding that evidence was improperly excluded as prejudicial when it "potentially was influential because it tended to complete the picture of defendant's version of the events[, and d]efendant was entitled to prove his theory of the case by presenting relevant, admissible evidence to the jury"). In this case, we conclude that the trial court did not abuse its discretion in admitting evidence of defendant's cellphone use. *See State v. Shaw*, 338 Or 586, 615, 113 P3d 898 (2005) (noting that a trial court has "broad discretion" when findings on the record support discretionary ruling under OEC 403).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.